737 F.2d 982
 39 Fed.R.Serv.2d 995, 1984-2 Trade Cases 66,126
 William R. BENNETT, et al., Plaintiffs Appellees, Sophie A.
O'Brien, etc., Veronica Woodall, John J. Dunne,
Mary Dunne, the Tamarac Homeowners
Assn., Charles and Ida
Diamond, Plaintiffs-Appellants,
v.
BEHRING CORPORATION, et al., Defendants-Appellees.
William R. BENNETT, et al., Plaintiffs,
The Tamarac Homeowners Association, Charles and Ida Diamond,
et al., Plaintiffs-Appellants,
v.
BEHRING CORP., et al., Defendants-Appellees.
 Nos. 82-5438, 83-5096.
 United States Court of Appeals,
Eleventh Circuit.
 July 30, 1984.
 
 Joseph A. Fitzsimmons, Fort Lauderdale, for O'Brien et al.
 Arthur W. Tifford, Miami, Fla., for Tamarac and Diamonds.
 Max Blumberg, pro se.
 John P. Freeman, Harry A. Swagart, III, Columbia, S.C., Jon E. Krupnick, Fort Lauderdale, Fla., for Bennett, et al.
 Michael Krul, Fort Lauderdale, Fla., for Bessemer, et al.
 Gilbert A. Haddad, Coral Gables, Fla., for Behring Corp., Leadership Housing, Inc. and Cerromarmon Corp.
 Andrew T. Lavin, Abrams, Anton, Robbins, Ressnick, Schneider & Mager, Hollywood, Fla., for Schechter, et al.
 George I. Platt, Schwartz & Nash, Fort Lauderdale, Fla., for Homeowner's Assoc. & Mainlands Seven Maintenance.
 Harry A. Swagart, III, Columbia, S.C., for members of class, other than those joined in the appeal.
 Joseph Easthope, Faircloth, Easthope & Traver, Fort Lauderdale, Fla., for Lutz.
 Appeals from the United States District Court for the Southern District of Florida.
 Before FAY and ANDERSON, Circuit Judges, and MARKEY*, Chief Judge of the Federal Circuit.
 FAY, Circuit Judge:
 
 
 1
 We review in this appeal an order from the United States District Court for the Southern District of Florida approving an antitrust class action settlement between plaintiff-class representatives and thirty-one of thirty-five defendants. The appellants in this appeal include several groups of dissident plaintiffs who argue that the settlement agreement is invalid in that it perpetuates a violation of the Sherman Antitrust Act; they also maintain that even if the agreement is valid, the number and substance of objections warrant this court's disapproval of the settlement. Plaintiffs additionally ask us to void those parts of the settlement which allegedly sanction real estate development schemes violative of state law. After carefully reviewing the record in light of these objections, we are not persuaded that the settlement must be set aside or modified. To the contrary, we find no abuse of discretion by the district court in its conclusion that the terms of the settlement, and the plan to distribute the settlement proceeds to class members, are fair, reasonable and adequate. We accordingly affirm the district court's approval of the settlement proposal.
 
 I. THE FACTS
 
 2
 This lawsuit's massive history began on June 6, 1972, when homeowners in the City of Tamarac, Florida, filed a six-count complaint in the United States District Court for the Southern District of Florida against the Behring Corporation, the original developer of Tamarac. The complaint sought to relieve the homeowners from deed restrictions, filed by Behring, requiring the payment of monthly fees for use and maintenance of the recreational facilities within thirty-one Tamarac subdivisions.[1] The original complaint, filed as a class action under Fed.R.Civ.P. 23, alleged various state law claims and violations of the Interstate Land Sales Act, 15 U.S.C. Sec. 1701 et seq. (1980). In October, 1973, the Interstate Land Sales Act claims were dismissed, and in July, 1974, the court granted class certification except as to plaintiffs' fraud claims.[2] Defendant, Behring Corp., then appealed the class certification order to the Fifth Circuit; the Fifth Circuit held that the district court action was not a final appealable order and thus dismissed for lack of jurisdiction. Bennett v. Behring Corp., 525 F.2d 1202 (5th Cir.), cert. denied, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 798 (1976).
 
 
 3
 In July, 1976, the plaintiffs moved to amend the complaint to add Count VII, an antitrust "tie-in" claim. Plaintiffs specifically contended in Count VII that the Tamarac development scheme amounts to a per se illegal tying agreement in that a recreational facilities maintenance lease is tied to the purchase of each home in violation of section one of the Sherman Act, 15 U.S.C. Sec. 1 (1980).[3] The motion to add Count VII was granted, as was plaintiff's motion to join thirty-four additional defendants as to Count VII.[4] In early 1979, a class action notice was disseminated; soon thereafter, over 2,000 class members opted out of the lawsuit. Also in 1979, Behring Corporation's motion for summary judgment as to the state law class action claims was granted, Bennett v. Behring Corp., 466 F.Supp. 689 (S.D.Fla.1979), and the individual fraud claims of the class representatives were settled and dismissed.
 
 
 4
 Throughout 1979 and early 1980, settlement negotiations and discovery were conducted as to the antitrust tie-in claim. In June, 1980, the court was notified that a proposed settlement had been agreed upon and on July 1, 1980, Judge Jose A. Gonzalez, Jr. held a hearing on the proposed settlement. At the hearing, both proponents of the settlement and its objectors extensively voiced their opinions. The essence of the settlement first proposed, an agreement substantially identical to that under consideration before us, is that it provides class members with a minimum of $675,000 in cash plus the opportunity to secure potential reductions in the recreation fees assessed against class members. The agreement also provides a vehicle whereby individual subdivisions, acting through their representative homeowners' associations, could negotiate separate agreements providing for the purchase of the recreational facilities and termination of the lease agreements from the defendants-owners. During late 1980, buy-outs of the recreational facilities by civic associations fostered by the agreement were voted on and overwhelmingly approved in ten of the subdivisions at issue. Those buy-outs were then incorporated into the modified agreement as it was presented to the court for preliminary approval on April 3, 1981.
 
 
 5
 On July 10, 1981, the court ordered preliminary approval of the settlement, at which time more than 6,000 individual class notices of the agreement were sent to Tamarac lot owners, the full text of the settlement notice was published in a newspaper of general circulation in the Tamarac area, and the agreement was displayed in the clubhouses of each of the thirty-one affected subdivisions. The court received general responses and objections to the proposed settlement throughout August and September, 1981. On September 25, 1981, Judge Gonzalez presided over a hearing as to whether final approval should be given to the settlement. At this hearing, the objections to the settlement raised at the preliminary approval stage were renewed. Additionally, new objections were raised. Finally, on March 15, 1982, Judge Gonzalez issued an order approving settlement as to the thirty-one settling defendants.[5] Bennett v. Behring Corp., 1982-2 Trade Cas. (CCH) Sec. 164,825 (S.D.Fla.1982). The objectors then appealed to this court.
 
 II. THE OBJECTIONS
 
 6
 Rule 23(e) of the Federal Rules of Civil Procedure requires that a settlement or compromise of a class action be approved by the district court. The court found the settlement involved in this appeal to be fair, reasonable and adequate and, therefore, approved it. Three categories of plaintiffs, each constituting a subclass of the homeowner class, contend before this court that the district court's findings and its concomitant approval of the settlements were erroneous. We are, accordingly, asked to set aside the court's approval.
 
 
 7
 The objecting plaintiff groups advance three reasons why the district court should not have given this settlement its imprimatur. Specifically, plaintiffs contend that the settlement should be set aside because it perpetuates a violation of the Sherman Antitrust Act by tying in separate recreational and maintenance leases to the purchase of a single family home. The plaintiffs also contend that the number and substance of objections to the settlement warrant its disapproval. The plaintiffs' third objection is predicated upon the contention that the land development release in Tamarac violates state law; any settlement which sanctions the scheme, plaintiffs argue, is thus illegal. We hold that none of the grounds advanced provides an adequate legal basis for reversing the district court's approval.
 
 
 8
 Rule 23(e) requires judicial approval of any class action settlement,[6] but does not provide any standards for such approval. It is now abundantly clear, however, that in order to approve a settlement, the district court must find that it "is fair, adequate and reasonable and is not the product of collusion between the parties." Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir.1977).[7] Determining the fairness of the settlement is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion. See In re Chicken Antitrust Litigation American Poultry, 669 F.2d 228, 238 (5th Cir. Unit B 1982);[8] In re Corrugated Container Antitrust Litigation (Container II), 643 F.2d 195, 207 (5th Cir. Unit B 1981), cert denied sub nom., CFS Continental, Inc. v. Adams Extract Company, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982). 456 U.S. 998 (1981). In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement. See United States v. City of Miami, 614 F.2d 1322, 1344 (5th Cir.1980).
 
 
 9
 Our review of the district court's order reveals that in approving the subject settlement, the court carefully identified the guidelines established by this court governing approval of class action settlements. Specifically, the court made findings of fact that there was no fraud or collusion in arriving at the settlement and that the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. See 1982-2 Trade Cas. at 72, 106, citing, inter alia, Container II, 643 F.2d at 207-08; Cotton v. Hinton, 559 F.2d at 1330-31; Miller v. Republic National Life Insurance Co., 559 F.2d 426, 428-29 (5th Cir.1977).
 
 
 10
 We note that final approval of the settlement was preceded by two preliminary hearings, dissemination of a detailed notice by first-class mail to all known class members, publication of the notice in a Tamarac newspaper, receipt by the court of written objections by class members, filing of briefs by proponents and objectors, and a hearing on the merits during which all objectors were given a full opportunity to testify. In its final order, the district court devoted lengthy consideration to all timely objections to the settlement and meticulously applied the lengthy guidelines of this court as to class actions and settlements.[9]
 
 
 11
 Our review of the objections reveals that virtually none of the findings of fact utilized by the district court to determine the adequacy of the settlement are challenged in this appeal. The objectors' primary argument is rather that the settlement agreement perpetuates the alleged recreational lease tie-in and for that reason cannot be approved. This argument, however, properly goes to the merits of the case as presented to the district court; it is inapposite in our review of the settlement under an abuse of discretion standard. Whether there is some merit to plaintiff's contentions that the recreational lease tie-in arrangements constitute antitrust violations is not the issue. Plaintiffs' argument begs the question, for unless the illegality of an arrangement under consideration is a legal certainty, the mere fact that certain of its features may be perpetuated is no bar to approval. See, e.g., Grunin v. International House of Pancakes, Inc., 513 F.2d 114 (8th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). In this case, the district court reasonably concluded that the plaintiff class would have difficulty succeeding on the merits and found the settlement to be in the best interests of the class. As we have emphasized elsewhere, "a just result is often no more than an arbitrary point between competing notions of reasonableness." Container II, 659 F.2d at 1325.
 
 
 12
 Plaintiffs also contend that, in addition to the alleged recreational tie-in upon which the class claims were based, the deed restrictions illegally tie lawn maintenance, exterior house maintenance and television antenna hook-ups to the purchase of residences in Tamarac. Plaintiffs argue that because the settlement agreement does not affect the maintenance leases, the maintenance tie-ins will continue unless the agreement is modified. We, however, will not consider this contention, for the record reveals that the maintenance lease issue was never brought before the district court for consideration. Plaintiff's initial allegations in 1972 contain a brief mention of the alleged maintenance tie-ins. However, the issue has not been mentioned since the initial stages of this litigation; it was not addressed in the pre-trial stipulations nor during any of the court's extensive hearings on the antitrust claims and the resulting settlement. Further, as far as we can discern, none of the parties who hold the maintenance leases is a party to this lawsuit. It is well settled that we will not address an issue which was not raised before the trial court. See, e.g., Container II, 643 F.2d at 222. In these circumstances, the district court had no basis upon which to consider the legality of the maintenance leases, and neither do we.
 
 
 13
 Plaintiffs' claim that there was sufficient opposition to the settlement to require disapproval is likewise without merit. Plaintiffs' discussion regarding the amount of objectors ignores the key fact that whatever the amount of opposition to the settlement, the reasons for that opposition have been thoroughly considered and ultimately rejected by the district court. We find that Judge Gonzalez' finding of firm support for the settlement is fully supported by the record.[10] We further find that the court properly considered the substance of opposition to the settlement in arriving at its conclusion that the agreement is fair, adequate and reasonable as to all parties involved.
 
 
 14
 Plaintiffs' contention that the settlement agreement condones a development scheme which is illegal under Florida state law was considered and rejected by Judge Gonzalez. See 1982-2 Trade Cas. at 72,111. We agree with the district court's finding that this case involves an antitrust treble damages class action which may properly be compromised under Rule 23(e) and which is not in contravention of either Florida law or public policy.
 
 III. CONCLUSION
 
 15
 After a thorough review of the record and a consideration of each of the objections presented before us, we conclude that the district court did not abuse its discretion in finding that the settlement at issue was fair, adequate and reasonable. To the contrary, a review of this record affirmatively shows great patience and diligence by counsel and the court in resolving a massive and difficult case. It is a tribute to all concerned that such a just settlement was consummated.
 
 
 16
 The judgment is AFFIRMED.
 
 
 
 *
 Honorable Howard T. Markey, Chief Judge, U.S. Court of Appeals, for the Federal Circuit, sitting by designation
 
 
 [1]
 In general, plaintiffs throughout this appeal attack a land development practice used with some frequency in southern Florida during the late 1960's and early 1970's. During that period certain developers created residential communities, such as condominium developments, or, as at issue here, single family home subdivisions, which included various social and recreational amenities for use of the residents. The social and recreational amenities were not conveyed in fee simple to home purchasers but, pursuant to deed restrictions, were leased to the homeowners for a specified period of time. In the Tamarac subdivisions involved here, a clubhouse and swimming pool (hereinafter referred to as "recreational facilities") were constructed within each subdivision and deed restrictions obligated the purchasers of each home in the subdivision to a fifty-year lease agreement requiring the homeowners to share in the maintenance of the recreational facilities and to make certain net leasing payments to the owner thereof. In many of the Tamarac subdivisions, the net rental payment obligation was expressly made subject to a cost-of-living index escalator clause
 
 
 [2]
 The class members numbered over eight thousand lot owners living in thirty-one subdivisions of the Tamarac development
 
 
 [3]
 Section one of the Sherman Act provides, in pertinent part:
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.... Every person who shall make any contract or engage in any combination or conspiracy declared by sections 1 to 7 of this title to be illegal shall be deemed guilty of misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.
 15 U.S.C. Sec. 1 (1980).
 
 
 [4]
 Included among the various defendants, in addition to Behring Corporation and its affiliated companies, are Kenneth Behring, the controlling person of the corporate developer; Behring's wife; and various persons who now own or have owned Tamarac recreational facilities, one of which is located in each of the thirty-one subdivisions
 
 
 [5]
 Since the district court issued the order involved in this appeal, the remaining four defendants have settled. The court has recently held hearings on the second settlement and has likewise ruled in favor of its final approval
 
 
 [6]
 Fed.R.Civ.P. 23(e) provides:
 Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.
 
 
 [7]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc ), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [8]
 In Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir.1982), this circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit
 
 
 [9]
 The district court's analysis is summarized at the conclusion of its order:
 In sum, the court has determined that the settlement has been achieved in good faith through arms-length negotiations and is not the product of collusion between the parties and/or their attorneys. There is no evidence of unethical behavior, want of skill or lack of zeal on the part of class counsel. The settlement provides significant cash and other tangible benefits to the class and objectors have submitted no evidence suggesting a contrary conclusion. The probability of success on the merits is low both as to liability and damages, and is certainly less than 50-50. The range of possible recovery is zero to $12,000,000. The settlement fund of $675,000 is a fair and adequate sum, in view of the risks of further litigation and the fact that damages are not the primary goal of this lawsuit. Moreover, the settlement yields class members substantial cash savings and the amount of opposition to the settlement is insufficient to warrant disapproval. The objections which have been raised are legally insufficient to require disapproval, and the objectors' evidence supports class counsels' opinions as to the reasonableness of the settlement, and there exists an adequate basis on the record from which to evaluate the settlement. All of the foregoing considered, the court finds that the settlement is fair, adequate and reasonable and that approval is in the best interests of the class.
 1982-2 Trade Cas. at 72,113.
 
 
 [10]
 The record certainly does reflect that, as found by Judge Gonzalez:
 Although there are numerous objectors, the Court also notes the existence of substantial sentiment in favor of the settlement. In the ten (10) Tamarac subdivisions which are the subject of the pending Stipulated Motions for Approval of Separate Agreements as part of the overall settlement, the agreements have been overwhelmingly endorsed by the residents....
 1982-2 Trade Cas. at 72,112-13.