Michael A. AUSTIN, Richard Elliot, Ogie Lee Hayes, Charles Orlander Guess, Warren Leatherwood, and Kervin Goodwin, Plaintiffs,

v.

Joe HOPPER, Commissioner of the Alabama Department of Corrections, Defendant.

No. CIV.A. 95–T–637–N.

United States District Court, M.D. Alabama, Northern Division.

Dec. 7, 1998.

J. Richard Cohen, Morris S. Dees, Jr., Rhonda Brownstein, Marcia Bull Stadeker, Ellen M. Bowden, Southern Poverty Law Center, Montgomery, AL, Roy S. Haber, Roy S. Haber, P.C., Eugene, OR, for Michael A. Austin, Richard Elliot, Ogie Lee Hayes, Charles Orlander Guess, Warren Leatherwood, Kervin Goodwin, plaintiffs.

Robin Garrett Laurie, Balch & Bingham, Montgomery, AL, Edward S. Allen, N. De-Wayne Pope, Balch & Bingham, Birmingham, AL, Andrew W. Redd, Albert S. Butler, Alabama Department of Corrections, William P. Gray, Jr., Gray & Jauregui, Montgomery, AL, for Fob James, Governor of the State of Alabama, defendant.

William F. Addison, Andrew W. Redd, Albert S. Butler, Kim T. Thomas, Alabama Dept. of Corrections, Legal Div., Montgomery, AL, for Joe Hopper, defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this class-action lawsuit, the plaintiffs, who are inmates in the Alabama prison system, challenged several of the system's policies and practices, including the following: the failure to provide adequate toilet facilities to inmates on work squads. The plaintiffs claimed that this policy and practice violated the first, fifth, eighth and fourteenth amendments to the United States Constitution, as enforced through 42 U.S.C.A. § 1983. The plaintiffs named the Commissioner of the Department of Corrections (hereinafter "DOC") as defendant. The subject-matter jurisdiction of the Court has been properly invoked pursuant to 28 U.S.C.A. §§ 1331, 1343(a)(4).[1]

This lawsuit is now before the court on the recommendation of the United States Magistrate Judge.[2] In it, she recommends the approval of the parties' settlement of the plaintiffs' claim that inmates on work squad are not provided toilet facilities. Based on the representation made at a hearing on November 17, 1998, the court has concluded that the proposed settlement should be approved.

## I. STANDARD OF REVIEW

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C.A. § 636(b)(1), the court makes a "de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made."[3] The court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b). *See also United States v. Raddatz*, 447 U.S. 667, 673–84, 100 S.Ct. 2406, 2411–16, 65 L.Ed.2d 424 (1980).

## II. FACTUAL SUMMARY

On May 3, 1995, the DOC Commissioner implemented a "chain gang" prison labor policy. Pursuant to this policy, inmates assigned to a chain gang were shackled by leg irons in groups of five; they were separated with eight feet of chain between them. The inmates, who were required to wear white

1. The plaintiffs asserted three other claims: (1) the use of "chain gangs"; (2) the use of "hitching posts;" and (3) the denial of visitation rights to certain inmates. These claims have already been addressed in a memorandum opinion and judgment entered on August 10, 1998. *See Austin v. Hopper*, 15 F.Supp.2d 1210 (M.D.Ala.1998) (Thompson, J.).

2. Recommendation of United States Magistrate Judge Vanzetta Penn McPherson, entered January 28, 1997 (Doc. no. 372) (hereinafter "recommendation of the Magistrate Judge").

3. In relevant part, Rule 72(b) provides:

"A magistrate judge assigned without consent of the parties to hear a pretrial matter dispositive of a claim ... shall promptly conduct such proceedings as are required. A record shall be made of all evidentiary proceedings before the magistrate judge, and a record may be made of such other proceedings as the magistrate judge deems necessary. The magistrate judge shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact when appropriate. The clerk shall forthwith mail copies to all parties.

"Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof. The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions."

The language of § 636(b)(1) is to the same effect as that of Rule 72(b).

uniforms with "CHAIN GANG" printed in black, were then taken to public highways or work sites on DOC property where they performed manual labor in ten-hour shifts. *See Austin v. Hopper*, 15 F.Supp.2d 1210, 1215 (M.D.Ala.1998) (Thompson, J.). One to two corrections officers supervised 25 to 40 inmates, who remained shackled to each other throughout the day, including during mealtime. The type of work the inmates performed included cutting grass, picking up litter, and breaking apart rocks. *Id.*

The plaintiffs claimed that the only toilet facility provided to inmates assigned to chain-gang labor was a "portable chamber pot behind a make-shift screen next to the road." *Id.* at 1225. The plaintiffs charged that the DOC did not provide inmates with toilet paper or with facilities for them to wash their hands after using the chamber pot and before eating lunch. They also stated that because the chamber pot was not always available, inmates were often forced to squat on the ground and to defecate in public. Either with or without the chamber pot arrangement, the prisoners were forced to relieve themselves while chained to the other inmates, which severely compromised their privacy. *Id.* at 1226. The plaintiffs contend that these practices created unsanitary conditions and deprived them of their basic human dignity; they also claim that the prison officials' deliberate indifference to these conditions resulted in the infliction of cruel and unusual punishment upon them in violation of the eighth and fourteenth amendments. *Id.*

In its memorandum opinion of August 10, 1998, this court approved the parties' settlement agreement resolving the chain-gang claim. *Id.* at 1215–24. The court further recognized that some of the plaintiffs' concerns over the provision of toilet facilities had been remedied by the cessation of chaining inmates together, specifically the inmates' lack of privacy in the use of the toilet facilities. *Id.* at 1226.

In order to resolve the outstanding issues, the parties' settlement agreement proposed that the DOC would promulgate a standard operating procedure, which would apply to all outside work squads supervised by the DOC. *Id.* "This standard operating procedure would include the following provisions: soap, water, and toilet paper will be provided to all inmates; there will be one portable toilet for every squad of 40 inmates; the portable toilet will be equipped with a heavyweight canvas screen; for medium custody inmates who labor on prison grounds (as opposed to those inmates who labor on public highways), and for whom no toilet facilities are available, reasonable efforts will be made to allow privacy for those who need to relieve themselves; and a shovel or other instrument will be provided to such medium security inmates for the purpose of digging a hole when an inmate must defecate and no toilet facility is available." *Id.* The agreement also states that "within four to eight months after the court approves the settlement, the Commissioner will conduct an unannounced inspection of these toilet facilities, and will take any corrective action necessary to ensure compliance with the standard operating procedure." *Id.* The results of such inspections, as well as any corrective measures, will be reported to the plaintiffs' counsel. *Id.* The plaintiffs also agreed "to dismiss their claim against the Commissioner without prejudice, and to waive their right to seek fees and costs." *Id.*

The court concluded, in its August 10, 1998, memorandum opinion, that the proposed toilet-facilities settlement agreement "is legal and is not against public policy, *see Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir.1985)." *Id.* However, the court was unable to evaluate the underlying fairness of the agreement without obtaining the views of the members of the class. *Id.* The court then entered an order requiring the parties to file with the court a joint proposed notice to the members of the putative plaintiff class regarding the settlement; a joint proposed means of distributing notice to the putative class; and a joint proposed form for putative class members to use to file their objections. *Id.* at 1273.

The proposed notice, which included means of distributing the notice and a proposed form, was filed with the court on September 8, 1998, and approved by order of the court on September 22, 1998. Twenty-six individuals filed objection forms. The court, as stat-

ed, conducted a fairness hearing on the toilet-facilities claim on November 17, 1998.

## III. DISCUSSION

Rule 23(e) of the Federal Rules of Civil Procedure provides, in part, that "[a] class action shall not be dismissed or compromised without the approval of the court." Not only must this court approve of the settlement agreement, it must also determine whether the agreement meets the requirements of the Prison Litigation Reform Act, 18 U.S.C.A. § 3626 (hereinafter "PLRA"), as well as whether the putative class to which the agreement applies meets the criteria for class certification under Rule 23. These issues will be addressed by the court below.

### A. The Prison Litigation Reform Act

■ Before approving the settlement agreement, the court must determine whether it complies with the PLRA. The PLRA limits the prospective relief a federal court may provide in cases concerning prison conditions. Prospective relief may "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," must be "narrowly drawn," and "is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C.A. § 3626(a)(1)(A). Further, the court may not "order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law" unless the following conditions are met: (1) federal law permits such relief to be ordered in violation of state or local law; (2) the relief is necessary to correct the violation of a federal right; and (3) no other relief will correct the violation of the federal right. § 3626(a)(1)(B). In addition to limiting the type of relief a federal court may grant, the PLRA also curtails the longevity of such relief to two years after the court approves or grants the relief, or one year after the court has entered an order denying termination of relief. § 3626(b)(1).

However, private settlement agreements are not subject to the above restrictions if

the terms of such an agreement are not subject to court enforcement other than the reinstatement of the civil proceeding. § 3626(c)(2)(A). A "private settlement agreement" is defined in the PLRA as "an agreement entered into among the parties that is not subject to judicial enforcement other than the reinstatement of the civil proceeding that the agreement settled." § 3626(g)(6). In addition, the PLRA provides that a party to a private settlement agreement claiming that the agreement has been breached is not precluded "from seeking in State court any remedy available under State law." § 3626(c)(2)(B).

By choosing to resolve their toilet-facilities claim through a private settlement, rather than through a judicially enforceable consent decree, the plaintiffs have attempted to avoid the PLRA's stringent limitations with respect to the type and duration of the relief. The expense of their trade-off is the relinquishment of their right to challenge the constitutionality of the DOC's practice of refusing to provide certain sanitary facilities to prisoners working on the chain gang. The agreement does not require judicial enforcement of its terms, but rather contemplates enforcement through mechanisms permitted by the PLRA: reinstatement of the action and state-court relief. Thus, the court does not need to decide whether the relief provided in the settlement agreement—provision of portable toilets, soap and water—comports with the PLRA's prospective relief limitations. *See, e.g., Austin,* 15 F.Supp.2d at 1219.

### B. Court Approval of the Settlement Agreement

■ Judicial policy favors voluntary settlement as the means of resolving class-action cases. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977).[4] However, "the settlement process is more susceptible than the adversarial process to certain types of abuse and, as a result, a court has a heavy, independent duty to ensure that the settlement is 'fair, adequate, and reasonable.'" *Paradise*

---

4. In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent

all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*v. Wells,* 686 F.Supp. 1442, 1444 (M.D.Ala. 1988) (Thompson, J.) (quoting *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1214 (5th Cir.1978)). This abuse can occur when, for example, "the interests of the class lawyer and the class may diverge, or a majority of the class may wrongfully compromise, betray or 'sell-out' the interests of the minority.'" *Id.* Besides evaluating the fairness of the settlement agreement, the court also has the duty to make sure that the settlement is not illegal or against public policy. *Piambino v. Bailey,* 757 F.2d 1112, 1119 (11th Cir.1985).

 Before resolving these concerns, the court must ensure that all interested parties were informed of the settlement and had the opportunity to voice their objections. As required by Rule 23(e) of the Federal Rules of Civil Procedure, the court ordered the parties to provide notice of the settlement of the toilet-facilities issue to the putative class of plaintiffs. This court-approved notice was posted on community bulletin boards in every dormitory in every prison, as well as in the law libraries and dining areas of each facility; it was also sent to county jails so as to facilitate notice to state inmates who were potential class members.[5] The notice informed inmates about the nature of the settlement, the advantages and disadvantages of the terms of the agreement, and the right to file an objection to the settlement, and the parties also provided inmates with forms for filing such objections.[6] A fairness hearing was held on November 17, 1998, and a total 26 objections to the agreement were filed by members of the class of plaintiffs.

The notice was adequate to inform all the interested parties about the provisions of the settlement of the toilet-facilities claim. The fairness hearings and opportunity for written objections were adequate to solicit and determine the views of the class members. In sum, the notice and fairness hearings were sufficient under Rule 23(e).

**1.** *Whether the Settlement Is Fair, Adequate, and Reasonable*

 The factors the court may examine in deciding whether a settlement is fair, adequate, and reasonable are as follows: (1) the views of the class members; (2) the views of the class counsel; (3) the substance and amount of opposition to the settlement; (4) the possible existence of collusion behind the settlement; (5) the stage of the proceedings; (6) the likelihood of success at trial; (7) the complexity, expense, and likely duration of the lawsuit; and (8) the range of possible recovery. *Shuford v. Alabama State Bd. of Educ.,* 897 F.Supp. 1535, 1548 (M.D.Ala.1995) (Thompson, J.) (citing *Leverso v. SouthTrust Bank of Al., Nat. Assoc.,* 18 F.3d 1527, 1530 n. 6 (11th Cir.1994); *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984)).

**a.** *Views of Class Members*

In determining whether a settlement agreement is fair, adequate, and reasonable, the obvious first place a court should look is to the views of the class itself. *Shuford,* 897 F.Supp. at 1548. As stated above, notice was given to the class, and 26 objections were filed in opposition to the settlement agreement. The court categorizes these objections in the following manner: eleven prisoners objected to the continuing use of chains to restrain inmates while on work duty, or asserted that the continuing use of chains constituted cruel and unusual punishment in violation of their constitutional rights; nine demanded money damages or parole privileges or sentence reduction; three stated they did not object, or filed blank forms, or approved the settlement; one individual enquired about his right to appeal the settlement; and two individuals complained about their treatment by prison guards while on the chain gang, including beatings and loss of privileges.

Based on a review of the objections and the testimony given at the fairness hearing, it appears that the majority of inmates who objected to the settlement agreement did so

---

**5.** Order, entered September 22, 1998, (Doc. no. 434) approving proposed means of distributing notice to putative class.

**6.** Notice attached to Parties' Joint Proposed Means of Distributing Notice to the Putative Class, filed August 8, 1998, (Doc. no. 430).

based on a misunderstanding of the terms of the agreement, rather than based on unfairness. The overwhelming majority of the objections do not even mention toilet facilities, and the only inmate that does complains of being beaten by a guard and asks for redress for that injury. Of the other 25 "objections," three do not object, one complains of mistreatment by a guard, and one enquires about the procedure for appealing the settlement. Eleven objections challenge the continuing practice of shackling inmates' legs while on work duty. However, the court expressly considered and approved the settlement agreement covering the chain-gang claim in its opinion of August 10, 1998. *Austin*, 15 F.Supp.2d at 1221. The remaining objections demanded monetary damages: "this set of objections must be balanced against the substantial benefits plaintiffs will derive from the settlement agreement, as well as with the fact that [the] ... objectors are permitted to file or maintain their actions for monetary damages stemming from injuries [due to inadequate toilet facilities]." *Id.*

### b. Views of Class Counsel

The judgment of class counsel is also important in addressing the fairness, adequacy, and reasonableness of a settlement agreement. *Pettway*, 576 F.2d at 1215. Class counsel for the plaintiffs are experienced civil rights lawyers who have shown to the court, through their participation and continued monitoring in this case, an enduring commitment to protecting the rights of the plaintiff class. Further, class counsel have agreed to waive attorneys' fees with regard to the toilet-facilities claim, thus alleviating any doubts about their dedication to the plaintiff class. *Id.* (court should be sensitive to potential conflict between class and its attorneys, particularly where large attorneys' fees may also be at stake). Class counsel have argued that the proposed settlement is fair, adequate and reasonable, and have thoroughly explained the benefits the settlement agreement provides, specifically in terms of the longevity of the agreement, and the court gives considerable weight to their views.

### c. Substance and Amount of Opposition to the Settlement Agreement

In their amended motion for class certification, the plaintiffs sought to certify two classes for purposes of the litigation, the first consisting of "all present and future Alabama inmates who have been or may be assigned to work in chain gangs." *Austin*, 15 F.Supp.2d at 1222. According to the plaintiffs, at the time of the filing of their motion, there were 700 inmates on Alabama chain gangs, and approximately 2,000 inmates had completed sentences on the chain gang. The DOC Commissioner has not contested the plaintiffs' allegations concerning the number of inmates who have been, are, or will be assigned to the chain gang. *Id.* At the fairness hearing, counsel for both parties indicated that between 2,100 and 2,300 inmates had received notice of the settlement.

The court can say with reasonable certainty that the 26 objections filed by the members of the putative class represent a small percentage of the class as a whole. In resolving objections within the class to a settlement agreement, this court has previously noted that "where the settlement provides for structural changes with each class member's interest in the adequacy of the change being substantially the same, and where there are no conflicts of interests among class members or among definable groups within the class, then the decision to approve the settlement 'may appropriately be described as an intrinsically "class" decision in which majority sentiments should be given great weight.'" *Paradise v. Wells*, 686 F.Supp. at 1445 (quoting *Pettway*, 576 F.2d at 1217). Here, where the number of objections to the settlement agreement is relatively small, and where the concerns voiced in those objections, particularly the concerns related to monetary damages and challenges to the DOC's practice of individually shackling inmates on work detail, are capable of being remedied outside or in addition to the settlement agreement, the court is confident in giving credence to the class majority's approval of the agreement.

This conclusion does not imply, however, that the court has interpreted the silence of the remaining class members to represent

agreement with the settlement. As the court has previously noted, "the court must look beyond the numbers to the total reality of the circumstances presented and from those circumstances attempt to extrapolate some picture of the true support for the proposed decree." *Reynolds v. King,* 790 F.Supp. 1101, 1109 (M.D.Ala.1990) (Thompson, J.) (declining to approve consent decree despite the overwhelming majority of class members who did not file objections to the decree). "The court is especially wary of such silence in the context of prison litigation where the members of the class are likely to have lower literacy levels, as well as limited access to materials to enable them to file an objections." *Austin,* 15 F.Supp.2d at 1223. *See also Johnson v. Avery,* 393 U.S. 483, 487, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969) ("Jails and penitentiaries include among their inmates a high percentage of persons who are totally or functionally illiterate, whose educational attainments are slight, and whose intelligence is limited."). "The court has therefore taken pains to examine the objections that were raised to determine whether the agreement is fair, adequate, and reasonable." *Austin,* 15 F.Supp.2d at 1223.

### d. Existence of Collusion

There has been no charge that the agreement was the product of collusion between the parties. There is no evidence that counsel or the named plaintiffs will benefit from the agreement at the expense of members of the class or sub-class: the settlement agreement specifically states that the plaintiffs have waived their right to fees and costs related to their toilet-facilities claim. Further, there is no evidence that the parties' negotiations were anything other than at arms length.

### e. Other Factors

The four remaining factors are interrelated: the stage of the proceedings; the likelihood of success at trial; the complexity, expense, and likely duration of the lawsuit; and the range of possible recovery. The issues presented in the toilet-facilities claim are particularly complex and would have required a contentious trial with considerable expense. Indeed, the parties and the Magistrate Judge estimated that trial on the chain-gang and toilet-facilities claims would have doubled the length of the trial, as well as created a much more voluminous record requiring the court to expend an even greater time considering the claims.

In light of the above considerations, the court has independently evaluated the fairness, adequacy, and reasonableness of the proposed settlement. Here, the plaintiffs have traded the risk of losing a protracted litigation, combined with the limited duration of any success under the PLRA, with the assurance that the DOC will cease the practice the plaintiffs contested in their first amended complaint. The court is satisfied that should an inmate wish to challenge the DOC's practice with regard to the provision of toilet facilities at work sites, the settlement agreement does not preclude such an inmate from doing so. A settlement implicitly means settling for less than all that is sought; it is "a reasoned choice of a certainty over a gamble, the certainty being the settlement and the gamble being the risk that comes with going to trial." *Paradise,* 686 F.Supp. at 1446. Here, the settlement agreement gives the plaintiffs more relief than they could have obtained by pursuing their claims in court in terms of longevity, and leaves open the possibility for future challenges to the DOC's provision of toilet facilities. Thus, the court approves the terms of the settlement agreement, and shall dismiss the toilet-facilities claim without prejudice.

### 2. Remaining Issues

The court has already held that the agreement is legal and good public policy, that the settling class meets the class-certification criteria of Rule 23 of the Federal Rules of Civil Procedure, and that the representation afforded the plaintiffs has been adequate. *Austin,* 15 F.Supp.2d at 1224–5.

### IV. CONCLUSION

For the foregoing reasons the settlement agreement will be approved and the toilet-facilities claim shall be dismissed without

prejudice. An appropriate final judgment will be entered.

*JUDGMENT*

In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, AND DECREE of the court:

(1) The parties' joint motion, filed September 27, 1996 (Doc. no. 344), for approval of the settlement agreement of the toilet-facilities claim is granted; and

(2) The plaintiffs' toilet-facilities claim is dismissed without prejudice.

It is further ORDERED that costs are taxed against defendant, for which execution may issue.