[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10547

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 26, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-01519-CV-1-MMP

SHARELE DIKEMAN,
RICHARD LULOW,
ANNA BARBOSA,
MICHAEL A. CADDELL,
CADDELL & CHAPMAN,
JULIUS DUNMORE,
ANGELA FETCHER

Plaintiffs-Appellants,

RUBY JOHNSON,

Plaintiff,

THOMAS S. BELL,
MARILYN BELL,
KELLY A. GAMBELLO,
ALICE LUSK,
GWANJUN KIM,

Objectors-Appellants,

versus

PROGRESSIVE EXPRESS INSURANCE COMPANY,
PROGRESSIVE AMERICAN INSURANCE COMPANY,
PROGRESSIVE CONSUMERS INSURANCE COMPANY,
PROGRESSIVE SOUTHEAST INSURANCE COMPANY,

PROGRESSIVE CASUALTY INSURANCE COMPANY, et al.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

**(March 26, 2008)**

Before HULL and WILSON, Circuit Judges, and ALBRITTON,[*] District Judge.

PER CURIAM:

This appeal stems from a nationwide class action settlement between The Progressive Corporation ("Progressive") and plaintiffs in several class actions that were consolidated in the Northern District of Florida.[1] All plaintiffs alleged that Progressive failed to meet the adverse action notice requirements of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m, by sending notices stating that the

_____

[*] Honorable W. Harold Albritton, United States District Judge for the Middle District of Alabama, sitting by designation.

[1] This multidistrict litigation and nationwide class settlement settled claims against The Progressive Corporation and 31 of its subsidiaries or mutual insurance company affiliate(s), collectively referred to as "Progressive."

Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation granted Progressive's request for consolidation and transferred similar cases to the Northern District of Florida for consolidated pretrial proceedings. *In re Progressive Corp. Ins. Underwriting & Rating Practices Litigation*, 259 F. Supp. 2d 1370 (J.P.M.L. 2003). At the time of consolidation, class certification was pending in the Oregon, Texas, and Louisiana cases.

plaintiffs' consumer credit reports "may" have resulted, rather than actually resulted, in adverse insurance determinations.[2] After six years of litigation, and the rejection of one proposed settlement agreement, the district court finally approved a settlement that conferred the following benefits to class members: (1) changes to Progressive's adverse action notice policy; (2) one free copy of a consumer credit report and a PLUS® credit score, furnished by Experian; (3) a free copy of a corrected credit report, if a class member finds and corrects errors, along with Progressive's promise to allay Experian's expenses incurred by the statutory credit correction procedures; and (4) a $75–$225 premium credit for current and former Progressive policyholders who can show that they would have received lower premiums but for subsequently corrected errors in their credit reports. The court also awarded class counsel $3,000,000 in attorneys' fees.

On appeal, the objecting class members argue that the district court abused its discretion by approving the settlement as fair, adequate, and reasonable because it did not provide each class member with a specific amount of monetary relief within the statutory range set forth in the FCRA. The objectors also argue that the

---

[2] The FCRA sets forth mandatory notice requirements for those who take adverse action on the basis of information contained in consumer reports. 15 U.S.C. § 1681m(a). The notice, which may be given in writing, orally, or electronically, must provide notice of the adverse action; contact information for the agency that provided the consumer report with a statement that the agency did not take the adverse action; and notice of the consumer's rights to obtain a free credit report from the credit reporting agency and dispute the accuracy of the information contained therein. 15 U.S.C. § 1681m(a)(1)-(3).

amount of attorneys' fees awarded was improper given the settlement's low value. Mr. Caddell, counsel for one of the objecting class members, appeals the district court's award of sanctions against him and his firm after the court found no legal or evidentiary basis for Mr. Caddell's assertion that class counsel intentionally omitted opt-out and objecting information from the first class notice.

A.  *Class Settlement Terms & Attorneys' Fees*

The district court must approve any settlement agreement in a class action. Fed. R. Civ. P. 23(e).  The court may approve the settlement, however, "only after a hearing and on a finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." *Id.*  Where, as here, a class action has been certified specifically for the purpose of settlement, "the district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey*, 757 F.2d 1112, 1138 (11th Cir. 1985).  The district court's conclusion that a class settlement is fair will not be disturbed absent a clear showing of abuse of discretion.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  "In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.*

4

We have identified the following factors as relevant to our review of whether a class settlement's terms are fair, reasonable and adequate:

(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id.*

Although the plaintiffs sought statutory damages ranging between $100 and $1000, statutory damages are available only for willful violations of the FRCA. *See* 15 U.S.C. § 1681n(a). The district court found, after considering the testimony and evidence presented at the fairness hearing, that "'willfulness' on the part of Progressive is seriously debatable and the agreed to settlement reflects that uncertainty." R. 359 at 5. After careful review of the record and the benefit of oral argument, we cannot say that the district court abused its discretion in approving the settlement agreement.

The district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983). Yet, the district court's discretion is not

5

unlimited, and "[a] conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). "It remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941.

In this case, the district court's only explanation for the fee award was that, "[c]onsidering the years Plaintiffs' counsel has spent working on this case, . . . an award of attorneys's fees and costs in the amount of $3,000,000.00 is fair and reasonable." R. 359 at 7. This conclusory statement does not allow for our meaningful review. *See Norman*, 836 F.2d at 1304 ("The court's order on attorney's fees must allow for meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation."). For these reasons, we vacate the award of attorneys' fees and remand to the district court.

On remand, the district court must explain the method it used to set the attorneys' fee award and make findings showing the factors and calculations used in setting that fee award. For example, the district court's order did not indicate whether the court used the percentage-of-the-common-fund method or lodestar method in setting its $3 million fee award. *See Camden I Condo. Ass'n. v. Dunkle*,

946 F.2d 768, 774 (11th Cir. 1991) (concluding that in class action cases, attorneys' fees awarded from a common settlement fund established for the benefit of the class "shall be based upon a reasonable percentage of the fund established for the benefit of the class" but that "[t]he lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards"). Although the FCRA provided for an award of costs and reasonable attorneys' fees to prevailing parties in a § 1681m action, *see* 15 U.S.C. §§ 1681n(c) (willful noncompliance), the district court is not limited to applying a lodestar analysis for a statutory fee-shifting award because the suits were resolved by a class settlement agreement without any express finding as to Progressive's willful noncompliance with the FRCA. The district court should indicate on remand what method it is using and why.[3]

Further, if the district court used the common-fund method, the parties vigorously disputed (in the district court and on appeal) the monetary value, if any, of the settlement. Even though we find no abuse of discretion in the district court's approving the ultimate settlement (which had mainly non-monetary benefits) as fair, the district court, if it was applying the common-fund method, should have

---

[3]Although the negotiated settlement included up to $3 million in attorneys' fees, the parties have not disputed that the district court has a supervisory role and ultimately must calculate and set the attorneys' fees award up to a maximum of the $3 million cap.

determined the monetary value of the settlement before applying the common-fund method to the attorneys' fees award.

On the other hand, if the district court was using the lodestar method, the district court must explain why it used that method and how it calculated the attorneys' fee award, including the total number of attorney hours reasonably spent by plaintiffs' counsel on the matter; the hourly rate used to calculate the award; whether a multiplier was used and, if so, in what amount; and the reasons why a multiplier is warranted or not. Further, even if the district court used the common-fund method, the district court should indicate whether the lodestar method is warranted to double-check the result of the percentage-of-the-common-fund method.

Whether the district court uses the lodestar or the common-fund method, the district court should apply the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989), to determine the appropriate statutory fee or the percentage to be utilized. *See Hensley*, 478 U.S. at 434 & n.9, 103 S. Ct. at 1940 & n.9 (finding that the district court may consider the *Johnson* factors to adjust the lodestar fee upward or downward while noting that many of those factors are presumed within the initial

calculation of reasonable hours by a reasonable hourly rate); *Camden I*, 946 F.2d at 772 & n.3, 775 (agreeing the *Johnson* factors continue to be appropriately used in common-fund cases); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (reaffirming that common-fund "benchmark" may be adjusted using the *Johnson* factors).

In this opinion we expressly do not resolve the issue of what method is appropriate in this case. We simply determine that the district court's conclusory order as to attorneys' fees does not allow for any meaningful review. *See Burke v. Ruttenberg,* 317 F.3d 1261, 1263 (11th Cir. 2003) (per curiam) (vacating order allocating fees in class action suit because "[n]o finding of fact or rationale is provided in the order to aid our understanding of the allocations made").

B. *Sanctions*

Similarly, the district court's award of sanctions is incapable of meaningful review. Mr. Smiljanich's motion for sanctions, in the amount of costs and attorneys' fees associated with responding to the motion to amend the case management order, was grounded in two sources: on the court's own initiative under Federal Rule of Civil Procedure 11(c)(1)(B) and 28 U.S.C. § 1927. We have held that "[w]hen a district court cites multiple sources of authority for issuing sanctions, the appellate court's basic task in reviewing the sanctions is to determine

9

whether the sanctions were permissible under at least one of those sources of authority." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2007), *superseding* 457 F.3d 1180 (11th Cir. 2006). However, here the district court did not cite Rule 11 or § 1927 or otherwise state any authority for issuing sanctions.

From our review of the district court's order, we are unable to determine under what authority the court issued sanctions and what conduct formed the basis for sanctions. Although the court did state that after conducting a full evidentiary hearing it determined there was no legal or evidentiary basis for the assertion that Mr. Smiljanich committed a "fraud upon the court," the court also failed to explain whether and how Mr. Caddell and his firm unreasonably, knowingly or recklessly pursued a frivolous claim. *Cf. Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (reaffirming the standard for testing conduct under Rule 11 as "reasonableness under the circumstances"); *Amlong*, 500 F.3d at 1242 (finding that sanctions under either § 1927 or the court's inherent authority are justified when "the attorney . . . *knowingly* or *recklessly* pursue[s] a frivolous claim or needlessly obstruct[s] the litigation of a non-frivolous claim"). Even if the court ordered sanctions on its own Rule 11 initiative, it is nonetheless required to specify the offending conduct and to direct the attorneys to show cause as to why they have

not violated Rule 11(b)'s certification provision.  *See* Fed. R. Civ. P. 11(c)(1)(B).  To that end, the parties raised procedural objections to the sanctions order which should be addressed by the district court in the first instance.  There is also no indication or calculation in the district court's order of the number of attorney hours reasonably awarded or of the hourly rate used.  For these reasons, we vacate the award of sanctions and remand to the district court for findings of fact and conclusions of law setting forth the bases for its award.  *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1197 (11th Cir. 2002) (vacating award of Rule 11 sanctions and remanding to the district court to "explain its decision such that it is capable of meaningful review").

AFFIRMED, IN PART; VACATED AND REMANDED, IN PART.