180 F.3d 93,
 CARPENTER TECHNOLOGY CORP., Plaintiff-Appellant,
v.
CITY OF BRIDGEPORT; Bridgeport Port Authority; Joseph P.
Ganim, Mayor of Bridgeport and Commissioner, Bridgeport Port
Authority; Joseph A. Riccio, Executive Director, Bridgeport
Port Authority, Defendants-Appellees.
 No. 99-7284.
 Docket No. 99-7284.
 United States Court of Appeals,
 Second Circuit.
Argued May 27, 1999.
Decided June 16, 1999.
 
 Appeal from a judgment of the United States District Court for the District of Connecticut (Alfred V. Covello, Chief Judge ), denying the plaintiff's motion for a preliminary injunction to prevent the taking of its property and sua sponte dismissing as unripe the plaintiff's action for both injunctive and declaratory relief. Without resolving whether a preliminary injunction is warranted, we hold that it was inappropriate to deny the plaintiff's motion for a preliminary injunction on the ground that the imminent taking of the plaintiff's property did not give rise to a threat of irreparable harm. We also conclude that the District Court erred in dismissing the plaintiff's claim for permanent injunctive relief. Finally, although we do not decide the ripeness issue, we conclude that the District Court's dismissal of the plaintiff's claim for declaratory relief as unripe was based in part on a misunderstanding of the Comprehensive Environmental Response, Compensation and Liability Act of 1980. Vacated and remanded.
 David M. Howard, Dechert Price & Rhoads, Philadelphia, PA, for Plaintiff-Appellant Carpenter Technology Corp.
 Edward F. Hennessey, Robinson & Cole LLP, Hartford, CT (John F.X. Peloso, Bradford S. Babbitt, of counsel), for Defendants-Appellees Bridgeport Port Authority & Joseph A. Riccio.
 Raymond Rizio, Quatrella & Rizio, LLC, Fairfield, CT (Robert G. Golger, of counsel), for Defendants-Appellees City of Bridgeport & Joseph P. Ganim.
 Before: VAN GRAAFEILAND, CALABRESI, and STRAUB, Circuit Judges.
 STRAUB, Circuit Judge:
 
 
 1
 Plaintiff Carpenter Technology Corporation ("Carpenter") appeals from a judgment of the United States District Court for the District of Connecticut (Alfred V. Covello, Chief Judge ), denying Carpenter's motion for a preliminary injunction to prevent the taking of its property by eminent domain and sua sponte dismissing as unripe Carpenter's action for both injunctive and declaratory relief against the City of Bridgeport, the Bridgeport Port Authority ("the Port Authority"), the Mayor of Bridgeport, and the Executive Director of the Port Authority. We hold that the District Court exceeded its allowable discretion in denying Carpenter's motion for a preliminary injunction on the ground that Carpenter had failed to show a threat of irreparable harm. We also conclude that the District Court erred in dismissing Carpenter's claim for permanent injunctive relief. Finally, although we do not decide the ripeness issue, we conclude that the District Court's dismissal of Carpenter's claim for declaratory relief as unripe was based in part on a misunderstanding of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq. We therefore vacate the judgment and remand the case so that the District Court may consider further the propriety of preliminary and permanent injunctive relief as well as the ripeness and, if appropriate, the merits of Carpenter's claim for declaratory relief.
 
 BACKGROUND
 
 2
 Carpenter owns a 47.5 acre waterfront property located at 730, 800, and 837 Seaview Avenue in Bridgeport, Connecticut. Carpenter operated a steel mill on the property from 1957 until 1988, when it shut down operations at the site. Over the last decade, Carpenter has sought to sell the property to a suitable private purchaser.
 
 
 3
 In preparation for such a sale and in cooperation with environmental regulatory agencies, Carpenter has taken steps to clean up the environmental contamination that exists at the site. In July 1992, Carpenter entered into a voluntary consent order with the Connecticut Department of Environmental Protection ("DEP"), wherein Carpenter agreed to obligations that continue even after transfer of title to the property. A restrictive convenant also provides that neither Carpenter nor any subsequent owner will disturb an eleven-acre plume of solidified fuel oil on the site without the DEP's consent. As a result of Carpenter's remediation efforts and the consent order, the DEP informed the United States Environmental Protection Agency ("EPA") in March 1997 that the property in its current state is not a substantial threat to human health and the environment, and the EPA decided in April 1997 not to list the property on its National Priorities List.
 
 
 4
 Before Carpenter's efforts to sell the property had come to fruition, the Port Authority became interested in acquiring the property. An affidavit presented to the District Court by the Executive Director of the Port Authority states that:
 
 
 5
 The decision to proceed with the acquisition of the Property by condemnation was, in part, the result of Carpenter's continuing failure to cooperate with the Port Authority in finding viable and productive uses for the Site. The initial interest of the Port Authority in the Property was in large part based upon the fact that, as a result of Carpenter's abandonment of the Site in the late 1980's and its failure to obtain a committed purchaser, the Property, which is prime deep water coastline, had become a site with significant, unused potential. In communications with representatives of Carpenter, in particular David Daddario of North American Realty Advisory Services, the Port Authority had consistently expressed to Carpenter its desire to develop the Site in accordance with the goals and objectives established for the Port District by the City legislature. Despite these positive advances by the Port Authority, Carpenter consistently refused to cooperate. Among other things, it refused to disclose to the Port Authority the extent and nature of the adverse environmental conditions at the Site, the status of Carpenter's efforts to market the Property and the price that it was seeking from potential developers. At one point, when Port Authority representatives suggested that the Authority might seek to condemn the Site, Carpenter responded that it would fight to prevent any such action.
 
 
 6
 The Port Authority envisions that after its acquisition, the property will become home to a world class shipyard, an expanded deep water port, an oyster production company, and water dependent users dislocated by a nearby development project.
 
 
 7
 On July 16, 1998, the Port Authority passed a resolution authorizing purchase or condemnation of the property under Connecticut law. See Conn. Gen.Stat. § 7-329f (providing that a port authority "may lease or acquire title to real ... property" and "may condemn real property located within the district which it deems necessary for the development of port facilities in the district, subject to the provisions of [Conn. Gen.Stat. § ] 48-12"). The Bridgeport Common Council subsequently approved this action by ordinance. On August 27, 1998, the Mayor of Bridgeport approved the Common Council ordinance.
 
 
 8
 Carpenter alleges that in June 1998, it successfully negotiated an agreement to sell the property to Philips Realty Acquisition Corporation, which planned to build a retail shopping and entertainment complex on the property. Carpenter maintains that this agreement contained indemnification provisions and contractual use restrictions to protect Carpenter from paying remediation expenses caused by Philips's development of the property. According to Carpenter's General Counsel, Carpenter and Philips tried to persuade Bridgeport to allow the Philips plan to go forward by offering to give twelve acres of land to the City, but Bridgeport representatives rejected this offer at a meeting in November 1998 and informed Carpenter that the City intended to proceed with its acquisition by condemnation and to pursue Carpenter for environmental remediation costs in excess of the City's valuation of the property. Carpenter also asserts that, upon information and belief, the Port Authority has already incurred testing and/or investigation expenses related to the environmental contamination of the property.
 
 
 9
 Carpenter further alleges that despite the steps taken toward condemnation in the summer of 1998, the Port Authority did not attempt to negotiate with it a purchase of the property until January 12, 1999. On that date, counsel for the Port Authority faxed a $2.5 million offer to Carpenter. The Port Authority's letter stated that the $2.5 million offer was "based upon an appraisal that assumes no environmental remediation costs or other exceptional liabilities associated with this acquisition other than payment of the purchase price and applicable taxes" and was "subject to customary contractual provisions, including without limitation, environmental provisions acceptable to the City." The letter also indicated that the offer would be deemed withdrawn if Carpenter had not accepted it by 5 p.m. on January 14, 1990.
 
 
 10
 By letter dated January 14, 1999, an attorney for Carpenter responded to the Port Authority's offer. The letter stated in part:
 
 
 11
 Your "offer" does not constitute a reasonable and good faith effort to negotiate a fair price for the Carpenter property. We do not understand how the Port Authority could possibly have in good faith arrived at a fair market value of $2.5 million.
 
 
 12
 Although it appears to Carpenter that the Port Authority has made an offer to purchase the property for only a fraction of its value, Carpenter remains willing to negotiate based on the Philips plan or any other reasonable alternative. We cannot do so, however, without sufficient information. Carpenter has the right to see the Port Authority's appraisals before it responds formally to your offer, and we request that you provide them immediately. Carpenter also requests that you explain precisely what you mean in your letter by "customary contractual provisions, including, without limitation, environmental provisions acceptable to the Port Authority."
 
 
 13
 ....
 
 
 14
 Please, accept this letter as Carpenter's formal request for an extension of the Port Authority's deadline, at least until Carpenter has an opportunity to review the Port Authority's appraisals.... I ... hope that the Port Authority will attempt to work out a fair resolution of this matter. If the Port Authority continues to act unreasonably, Carpenter will take whatever steps it must to protect its interests.
 
 
 15
 The Port Authority did not respond to Carpenter's letter.
 
 
 16
 Instead, on January 15, 1999, the Port Authority began the process of condemning the property by filing a Notice of Condemnation and a Statement of Compensation with the Clerk of the Superior Court for the Judicial District of Fairfield at Bridgeport and depositing $2.5 million with the Clerk. On January 28, 1999, Carpenter filed with the Clerk of the Superior Court an Appeal and Application for a Review of the Statement of Compensation, the statutory trigger for a judicial review of the amount of compensation. See Conn. Gen.Stat. § 8-132. On January 29, 1999, Carpenter removed the action to the United States District Court for the District of Connecticut on the basis of diversity of citizenship and Rule 71A(k) of the Federal Rules of Civil Procedure. See Bridgeport Port Auth. v. Carpenter Tech. Corp., No. 99-CV-174 (Warren W. Eginton, Judge ).
 
 
 17
 Under Connecticut law, the Clerk of the Superior Court ordinarily issues a Certificate of Taking shortly after a notice of the condemnation has been given and documentation thereof has been filed with the Superior Court. See Conn. Gen.Stat. § 8-129. However, on January 29, 1999, Carpenter's counsel wrote to the Clerk, informing him of the removal and asserting that the removal stripped him of his authority to issue a Certificate of Taking. On February 1, 1999, the Clerk refused to issue a Certificate of Taking to the Port Authority. The Port Authority has since moved to remand the removed action or, in the alternative, to clarify the effect of removal in such a way as to permit the issuance of a Certificate of Taking.
 
 
 18
 Carpenter filed this action on January 29, 1999, seeking a preliminary and permanent injunction against the transfer of title to the Port Authority or, alternatively, a declaratory judgment that the Port Authority or any future owner should be liable instead of Carpenter for any environmental remediation costs related to future development of the property following transfer of title to the Port Authority.
 
 
 19
 On February 8, 1999, the District Court heard argument on Carpenter's motion for a preliminary injunction. By ruling filed February 12, 1999, the District Court denied Carpenter's motion for a preliminary injunction and sua sponte dismissed the action without prejudice for lack of subject matter jurisdiction. With respect to the motion for a preliminary injunction, the District Court explained that Carpenter had failed to demonstrate that it would suffer irreparable harm absent injunctive relief. As to Carpenter's request for declaratory relief, the District Court stated:
 
 
 20
 [D]ue to the remote and speculative nature of any potential harm to the plaintiff, this issue is not now ripe for adjudication. Specifically, if and until such time as the City or a third party transferee disturbs the environmental status quo at the property, resulting in a duly authorized state or federal environmental agency making a claim against the plaintiff for remediation costs, any opinion rendered by the court on this issue would be purely advisory.
 
 
 21
 The District Court did not expressly consider Carpenter's request for a permanent injunction, but dismissed Carpenter's entire action for lack of subject matter jurisdiction.
 
 
 22
 On March 10, 1999, Carpenter filed a notice of appeal. On March 12, 1999, Carpenter moved this Court for an expedited appeal and for an injunction pending appeal. On April 6, 1999, a panel of this Court granted the motion for an expedited appeal but denied the motion for an injunction pending appeal.
 
 DISCUSSION
 
 23
 On appeal, Carpenter contends that: (1) the District Court abused its discretion in denying Carpenter's motion for a preliminary injunction; (2) the District Court erred in dismissing Carpenter's claim for permanent injunctive relief without explanation; and (3) the District Court erred in dismissing Carpenter's claim for declaratory relief as unripe. We address these arguments in turn.
 
 
 24
 I. Denial of the Motion for a Preliminary Injunction
 
 
 25
 The District Court denied Carpenter's motion for a preliminary injunction on the ground that Carpenter had not shown that it would suffer an irreparable injury absent such relief. We review the denial of a preliminary injunction for abuse of discretion. See Charette v. Town of Oyster Bay, 159 F.3d 749, 755 (2d Cir.1998).
 
 
 26
 We conclude that on the facts of this case, the denial of a preliminary injunction for failure to establish irreparable injury exceeded the District Court's allowable discretion. Carpenter seeks a preliminary injunction to prevent the taking of its real property by the Port Authority. The Connecticut Supreme Court has recognized that a party seeking judicial review of a government agency's decision to condemn property has no adequate remedy at law and is therefore entitled to obtain equitable relief. See Simmons v. State, 160 Conn. 492, 501-02, 280 A.2d 351, 356 (1971); see also Stocker v. City of Waterbury, 154 Conn. 446, 451, 226 A.2d 514, 517 (1967) (describing Conn. Gen.Stat. § 8-129). Because real property is at issue and because Carpenter cannot raise its claim for injunctive relief to prevent the taking of its property in the valuation proceeding, Carpenter has shown a threat of irreparable injury.
 
 
 27
 On this record, however, we cannot determine whether the other requirements for the issuance of a preliminary injunction have been met. We therefore vacate the denial of the preliminary injunction and remand so that the District Court may make factual findings and determine whether a preliminary injunction is appropriate. Because Carpenter "seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," it must establish a likelihood that it will succeed on the merits of its claim. Plaza Health Lab., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir.1989), quoted in Time Warner Cable v. Bloomberg L.P., 118 F.3d 917, 923 (2d Cir.1997). In considering Carpenter's probability of success on the merits, the District Court should consider whether it is probable that it will ultimately find that the Port Authority has not exhausted all reasonable efforts to obtain the property by agreement as required under Connecticut law. See Conn. Gen.Stat. § 48-12 (specifying the procedure for condemning land "if those desiring to take such property cannot agree with the owner upon the amount to be paid him for any property thus taken"); Town of Darien v. Kavookjian, 151 Conn. 659, 661, 202 A.2d 147, 149 ("[I]nability to agree with the owner of property sought to be condemned is a condition precedent to condemnation under the statute."), cert. denied, 379 U.S. 840, 85 S.Ct. 77, 13 L.Ed.2d 46 (1964); see also Connecticut Light & Power Co. v. Costello, 161 Conn. 430, 441-42, 288 A.2d 415, 421 (1971); Town of W. Hartford v. Talcott, 138 Conn. 82, 89, 82 A.2d 351, 354 (1951). Additionally, the District Court should consider the balance of public interests affected in determining whether Carpenter's threatened irreparable injury and probability of success on the merits warrant injunctive relief. See Time Warner, 118 F.3d at 929; see also Rodriguez v. DeBuono, --- F.3d ----, 1999 WL 247113, at * 4 (2d Cir.1999) (per curiam).
 
 
 28
 II. Dismissal of Carpenter's Claim for Permanent Injunctive Relief
 
 
 29
 The District Court did not explain why it dismissed the part of Carpenter's action that seeks a permanent injunction. The defendants contend that the District Court's dismissal was justified because Carpenter's claim for injunctive relief was unripe. We reject this argument. Whatever the merits of the defendants' contention that Carpenter's claim for declaratory relief is unripe, there is no question that the dispute over whether the Port Authority is legally entitled to take Carpenter's property is now ripe as the Port Authority has already initiated the condemnation process.
 
 
 30
 The defendants argue in the alternative that the District Court was justified in dismissing Carpenter's claim for permanent injunctive relief because the District Court concluded that Carpenter had not shown a threat of irreparable harm. For the reasons discussed above, we find this argument to be without merit. Accordingly, we vacate the District Court's dismissal of this part of the action and remand Carpenter's claim for permanent injunctive relief to the District Court for its renewed consideration.
 
 
 31
 III. Dismissal of Carpenter's Claim for Declaratory Relief
 
 
 32
 Article III, § 2 of the United States Constitution permits federal courts to hear only those disputes that present a "case or controversy." See Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). Thus, jurisdiction exists only if the plaintiff has "suffered, or be[en] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). The District Court dismissed Carpenter's declaratory judgment action on the theory that it did not present a ripe case or controversy. For the reasons that follow, we decline to rule on ripeness, but instead remand the issue for the District Court's reconsideration.
 
 
 33
 We note first that Carpenter's request for a declaratory judgment is presented in the alternative. Because we are remanding the issue of injunctive relief, it is possible that the question of whether the declaratory claim is ripe need not be decided at all.
 
 
 34
 We also question the District Court's analysis of the issue. Acting sua sponte and without the benefit of briefing, the District Court determined that Carpenter's liability for remediation costs was too speculative to present a ripe case or controversy. Specifically, the District Court concluded that:
 
 
 35
 in order for the plaintiff to actually be harmed, a number of contingencies would have to occur, including the following: 1) the superior court clerk would have to issue a Certificate of Taking, so that the City could perfect its condemnation of the property by taking title; 2) the City or a third party transferee would have to implement a development or remediation plan with respect to the property which proved to be physically invasive and [disruptive] of the environmental status quo; 3) the DEP (or USEPA) would have to determine that additional environmental remediation was required at the site; 4) the appropriate state or federal environmental agency would have to seek to recover the cost of the environmental remediation from the plaintiff.
 
 
 36
 We are not convinced that the third and fourth contingencies outlined above are in fact preconditions to liability. Under CERCLA, a private party may bring a cost recovery action or seek a declaratory judgment even in the absence of a governmental enforcement action. See CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B) (imposing liability on potentially responsible parties for "necessary costs of response incurred by any ... person [other than the United States Government or a state or an Indian tribe] consistent with the national contingency plan"); B.F. Goodrich v. Betkoski, 99 F.3d 505, 517-18 (2d Cir.1996) ("Congress [through CERCLA] has explicitly authorized private rights of action independent of EPA enforcement decisions."), reh'g denied & decision clarified, 112 F.3d 88 (2d Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998); see also Tanglewood E. Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1575 (5th Cir.1988) (agreeing with other circuits in finding "no merit to the contention that prior governmental involvement is a prerequisite to the recouping of [CERCLA] response costs"). Moreover, it is not clear that the District Court considered that actions for declaratory relief by their nature sometimes ripen before actions seeking to impose liability on the same subject matter are actually brought. Since we are remanding Carpenter's claim for injunctive relief, there is no reason for us to evaluate the arguments raised in the parties' briefs for the first time on appeal. Instead, we remand the question of ripeness for the District Court's reconsideration in light of our comments and the parties' briefs.
 
 CONCLUSION
 
 37
 The judgment of the District Court is vacated, and the case is remanded for further proceedings consistent with this opinion.