**Louis VARSAMES, Jr. and Paul A. Varsames, Plaintiffs,**

v.

**Frank PALAZZOLO, Joseph Mangi, Eric Gladstein, Frank Bochicchio, John Perykasz, Palazzolo Investment Group, Mangi Gladstein Properties Corp. and Townsend Management I & II Corp., Defendants.**

No. 00 CIV. 1323 (RWS).

United States District Court,
S.D. New York.

May 24, 2000.

Rosner & Nocera, New York City, John A. Nocera, John Foudy, of counsel, Steptoe & Johnson, Washington, DC, Howard H. Stahl, Steven K. Davidson, George R. Calhoun, V, of counsel, for Plaintiffs.

Jerry I. Lefkowitz, Attorney for Defendants Joseph Mangi, Eric Gladstein, Frank Bochiccio, John Perykasz, Mangi Gladstein Properties Corp. and Townsend Mgt. I & II Corp., Lake Success, Hass & Gottlieb, Attorney for Defendants Frank Palazzolo and Palazzolo Investment Group, Scarsdale, By Lawrence Gottlieb, of counsel, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiffs Louis Varsames, Jr. and Paul Varsames (collectively, "the Varsames") move for appointment of a receiver *pendente lite* for Townsend Management I & II Corp. ("Townsend") and the real property located at 621–623 and 625–627 Manida Street, Bronx, New York (the "Manida Street Property") or, in the alternative, for an interim order granting them possession, management, and control of Townsend and the Manida Street Property during the pendency of this action. This motion is opposed by defendants Joseph Mangi, Eric Gladstein ("Gladstein"), Frank Bochicchio ("Bochicchio"), John Perykasz ("Peryk-asz"), Mangi Gladstein Properties Corp. ("Mangi Gladstein Properties"), and Townsend Management I & II Corp. ("Townsend") (collectively, the "Mangi Defendants"). For the reasons set forth below, the motion for appointment of a receiver is denied, and the motion for an interim order granting the Varsames possession of the Townsend stock and, therefore, the right to manage and control of Townsend and the Manida Street property is granted.

### The Parties

Plaintiff Louis Varsames, Jr., is a resident of Florida. Plaintiff Paul Varsames is a resident of Connecticut. The Varsames are in the construction business.

Defendants Mangi and Gladstein are residents of New York. Mangi and Gladstein are in the business of assisting persons in purchasing properties and thereafter managing said properties.

Defendants Bochicchio and Perykasz are residents of New York.

Defendant Mangi Gladstein Properties is a corporation existing under the laws of New York with its offices in Scarsdale, New York.

Defendant Townsend is a corporation existing under the laws of New York with its principal place of business in Scarsdale, New York.

### Prior Proceedings

The complaint in the instant action was filed on February 22, 2000 alleging breach of contract, unjust enrichment, fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil conspiracy, tortious interference with contract relations, conversion, and negligent misrepresentation. In their complaint the Varsames seek appointment of a receiver over Townsend and the Manida Street Property, damages, and rescission of the contract.

On February 23, 2000, the Varsames moved by Order to Show Cause for appointment of a receiver over Townsend

and the Manida Street Property. At the initial hearing held before the Honorable Leonard B. Sand, the hearing on the merits of this motion was continued but the defendants were enjoined from taking actions outside the ordinary course of business and were ordered to provide the Varsames with access to the books and records of Townsend.

Oral argument was heard on the motion for a receiver on March 15, 2000 by this Court. The Court reserved decision on the motion and scheduled an expedited trial for May 1, 2000. At a hearing held on April 5, 2000, however, the Court informed the parties that the trial would have to be postponed and that the Court would consider a renewed request for appointment of a receiver.

The Varsames filed the instant motion on April 17, 2000. The parties had previously submitted pleadings, affidavits, and exhibits in relation to the motion. No evidentiary hearing was held or required with respect to the motion in the alternative for injunctive relief. The evidence in the form of affidavits and exhibits was sufficient based on the circumstances of the case and, moreover, the underlying facts upon which the motion turns are either undisputed or resolution of any existing disputes will not affect the Varsames' entitlement to the relief granted herein. *See Drywall Tapers & Pointers Local 1974 v. Local 530*, 954 F.2d 69, 76–77 (2d Cir.1992); *Brown v. Giuliani*, 158 F.R.D. 251, 254 (E.D.N.Y.1994). Oral argument was heard on May 3, at which time the matter was deemed fully submitted.

Also pending before the Court is a motion joined in by all defendants to dismiss the RICO and civil conspiracy claims in the Varsames complaint, and a motion by the Varsames to dismiss the Mangi Defendants' counterclaims.[1] The Court reserves decision on these motions.

1. The Mangi Defendants have counterclaimed for damages, a declaratory judgment that the Varsames have forfeited their rights to the

### Findings of Fact

In or about February 1999, discussions occurred between the Varsames and Gladstein, Mangi, and Frank Palazzolo ("Palazzolo") about a real estate investment involving the purchase and management of an apartment complex located in the Bronx, New York, i.e., the Manida Street Property.

In a letter dated March 14, 1999 and executed by Louis Varsames, Jr., and Mangi, it is stated *inter alia* that the Varsames would purchase the Manida Street Property from Palazzolo or a corporation to be formed by him; that a mortgage would be established though Townsend; that the Manida Street Property would be managed by the Mangi Defendants; and that the Varsames would be issued 75% of the Townsend stock and Perykasz and Bochicchio would be issued 25% of the stock, subject to a one dollar ($1.00) purchase option in favor of the Varsames.

Also in March 1999, the Varsames made two payments in the amount of three hundred and twenty five thousand dollars ($325,000) each, for a total of six hundred and fifty thousand dollars ($650,000), to Mangi towards the purchase of the Manida Street Property.

The closing for the sale of the Manida Street Property took place on June 30, 1999. A mortgage note (the "Note") was executed on that date between Townsend and Banco Popular North America ("Banco Popular") in the amount of two million four hundred thousand dollars ($2.4 million) with interest thereon in the amount of 8.52% per annum. The Note was signed on behalf of Townsend by Mangi, as President of Townsend. The mortgage is a recourse mortgage.

Also on June 30, 1999, a guaranty was executed between Mangi and Banco Popular pursuant to which Mangi became the

Townsend stock and that the stock is owned by Mangi exclusively, and for attorneys' fees and costs and disbursements in this action.

guarantor for the mortgage loan. In addition, Mangi had previously obtained a loan in his name for three hundred thousand dollars ($300,000) from Palazzolo and Gladstein towards the financing of the purchase. Thus, Mangi is the guarantor for the total amount of two million seven hundred thousand dollars ($2.7 million).

Under the deed, title to the Manida Street Property was conveyed by the Manida Street Realty Corporation to Townsend.

Title to the stock in Townsend was issued to Mangi. In or about the fall of 1999, the Varsames demanded that the Townsend stock be transferred to them. Mangi did not do so. A dispute ensued over the terms of the agreement between the parties and their respective rights and obligations, culminating in the instant action. By letter of February 9, 2000, the Varsames notified Perykasz and Bochicchio that they were exercising their purchase option and enclosed a check for $1.00. Title to the Townsend stock remains with Mangi as of the present date.

The Manida Street Property has been managed by the Mangi Defendants operating through Townsend since its purchase. The Townsend offices are housed in the offices of the Mangi Gladstein Properties.

### Conclusions of Law

#### I. Legal Standard For Appointing A Receiver

A federal court has the power in equity to appoint a receiver in order to protect a party's interest in property. *See* Fed.R.Civ.P. 66. The appointment of a receiver is considered an extraordinary remedy and should be utilized only where clearly necessary to protect an interest by the plaintiff in property where the rights over that property are in dispute. *See Ferguson v. Tabah,* 288 F.2d 665, 674 (2d Cir.1961) (receivership is a "drastic remedy" to be imposed "only where no lesser relief will be effective"); *see also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, (8th Cir.1993). A decision to appoint or not to appoint a receiver is committed to the sound discretion of the trial court. *See Rosen v. Siegel,* 106 F.3d 28, 34 (2d Cir.1997).

Whether a federal court should appoint a receiver in a diversity action is governed by federal law. *See Prudential Ins. Co. of America v. Hilton Hotels Corp.,* No. 95 Civ. 5575, at *1–*2, 1995 WL 758781 (S.D.N.Y. Dec. 21, 1995) *see also Sterling v. Stewart,* 158 F.3d 1199, 1201 (11th Cir.1998); *see generally* 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1999).

The following factors are considered relevant to establishing the need for a receivership:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

Wright & Miller at § 2983 (citations omitted).

#### II. Appointment Of A Receiver Is Not Warranted

The Varsames contend that appointment of a receiver is warranted because the Mangi Defendants have engaged in mismanagement and fraud that threaten the well-being of the property. For their part, the Mangi Defendants deny these allegations and contend that Mangi stands to suffer harm if a receiver is appointed. Most critically, however, the Mangi Defendants aver that appointment of a receiver is not warranted because "in the case at bar there is no struggle for ownership".

In Mangi's affidavit submitted in opposition to the Renewed Motion, Mangi concedes the Varsames' interest in the property. Mangi states that he nonetheless

has a "substantial interest" therein because, as the guarantor, he is personally liable in the event of foreclosure for the $2.7 million obtained for financing of the Manida Street Property purchase.

■ Thus, despite having conceded the Varsames' property interest, the Mangi Defendants contend that they rather than a receiver should have control over Townsend so that Mangi can ensure that the debt service is met and thereby protect his "substantial interest" as a guarantor. A guarantor's interest, however, is in the nature of a contingent liability rather than a property right. *See Pro–Specialties, Inc. v. Thomas Funding Corp.*, 812 F.2d 797, 799 (2d Cir.1987); 26 Wright & Miller § 59:159 (1999). Thus, the Varsames' "interest" and Mangi's "interest" are different in kind.

The Mangi Defendants contend that a receiver is not warranted because there is no struggle over ownership. The purpose of a receivership is to protect a party's interest in property pending resolution of a dispute over ownership or control between it and another party with a claim to the property. *See, e.g. Citibank v. Nyland (CF8) Ltd.*, 839 F.2d 93, 96 (2d Cir.1988) (litigation concerning ownership of real property); *Prudential Ins.*, 1995 WL 758781, at *1 (litigation over control of property as between parties with 50% interest each therein).

The Varsames are thus in the position of urging appointment of a receiver over their own property. The Varsames have cited to no authority for the proposition that a receiver would be appropriate in these circumstances, nor is the Court aware of any. The Court concludes that a receiver should not be appointed. Resolution of the allegations concerning mismanagement and fraud is not necessary to reach this conclusion because the ownership issue is dispositive.[2]

### III. *The Standard for a Preliminary Injunction*

■ The standard for granting a preliminary injunction in this circuit is "(1) a showing of irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tipping in favor of the movant." *Civic Ass'n of the Deaf v. Giuliani*, 915 F.Supp. 622, 631 (S.D.N.Y.1996) (*citing Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir.1994)); *see also Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 998–99 (2d Cir.1997).

In general, a movant proceeding on the basis of likelihood of success need only show that the probability of prevailing is greater than fifty percent. *See Eng v. Smith*, 849 F.2d 80, 82 (2d Cir.1988). Satisfaction of a higher standard, however, is required where the injunction will alter, rather than maintain, the status quo, or where the injunction will provide the movant with substantially all the relief sought. *See id.* In either of these scenarios, the movant must show " 'a substantial likelihood of success on the merits, i.e., that [his] cause is considerably more likely to succeed than fail.' " *Id.* (*citing Abdul Wali v. Coughlin*, 754 F.2d 1015, 1026 (2d Cir.1985)). Discussion of this standard is warranted based on the relief sought here, although as discussed below the Court concludes in the end that the heightened standard does not apply.

Determining whether the circumstances of a case trigger application of the higher standard can be a matter of some ambiguity. *See Tom Doherty Assocs. Inc. v. Saban*

---

2. Nor is resolution of the Mangi Defendants' counterclaims necessary here. Whether or not they ultimately prevail in their claim that, pursuant to oral amendments of the agreement reflected in the March 14, 1999 letter, the Varsames "forfeited" their property interest in the Townsend stock, the evidence submitted with regard to the instant motion is that Mangi has only a contingent liability. Indeed, as discussed, Mangi concedes as much in his affidavit.

*Entertainment, Inc.,* 60 F.3d 27, 34–35 (2d Cir.1995). It may be difficult to draw a distinction between the typical preliminary injunction, which is directed at maintaining the status quo pending a trial on the merits, and a mandatory injunction, which commands a positive act. *See id.* at 34. This is especially so in the case of contract disputes, where the meaning of "status quo" may be uncertain. *See id.* The plaintiff is likely to view the status quo as "the situation that would prevail if its·version of the contract were performed. A defendant's view of the status quo is its continued failure to perform as the plaintiff desires." *Id.*

The Second Circuit has observed that a preliminary injunction that requires the parties to do more than is required by their contract agreement "arguably alters the status quo." *Tom Doherty Assocs.,* 60 F.3d at 35. However, an order that seeks to restore the parties as best as possible to their positions prior to injury already inflicted by the defendant may be deemed an order directed at preserving the status quo. *See Unicon Management Corp. v. Koppers Co.,* 366 F.2d 199, 204 (2d Cir. 1966); *see generally* 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, § 2948 (1995).

Whether a preliminary injunction must be deemed to grant "substantially all the relief sought" is also potentially fraught with ambiguity. The Second Circuit has clarified, however, that this scenario occurs only when an injunction "will render a trial on the merits largely or partly meaningless, either because of temporal concerns, say, a case involving the live televising of an event ... or because of the nature of the subject of the litigation, say ... involving the disclosure of confidential information." *Tom Doherty Assocs.,* 60 F.3d at 35. If, on the other hand, a defendant who prevails at trial will be able to obtain a meaningful remedy then no heightened showing is required to grant a preliminary injunction to the plaintiff. *See id.*

## A. The Varsames Have Shown Irreparable Injury

Irreparable harm is injury for which a monetary award cannot compensate. *See JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990). Moreover, the movant must show that irreparable damages are not only possible but likely. *See Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989).

Deprivation of an interest in real property constitutes irreparable harm. *See, e.g., Carpenter Technology Corp. v. City of Bridgeport,* 180 F.3d 93, 97 (2d Cir.1999) (condemnation of plaintiff's real property constitutes irreparable injury); *The Southland Corp. v. Froelich,* 41 F.Supp.2d 227, 242 (E.D.N.Y.1999) (irreparable harm stems from inability to make productive use of and exercise control over property); *Persaud v. Exxon Corp.,* 867 F.Supp. 128, 141 (E.D.N.Y.1994) (irreparable harm "flows from the owner's inability to make better use of the site, or the owner's lack of control").

The Varsames, by being denied title to the Townsend shares and ownership and control of the Manida Street Property, are deprived of the ability to make productive use of their own property. This deprivation rises to the level of irreparable injury. *See Southland Corp.,* 41 F.Supp.2d at 242.

## B. The Varsames Have Shown A Sufficient Likelihood Of Success On The Merits

Determining the appropriate standard as to the requisite showing of the likelihood of success is complicated at least superficially by the fact that the relief sought requires the Mangi Defendants to take affirmative action, i.e., to transfer title of the Townsend stock to the Varsames. However, upon further examination it is apparent that the ordinary standard— "likelihood of success"—applies because

granting such relief is directed at restoring the status quo ante rather than altering it.

As discussed above, the Mangi Defendants have conceded the Varsames' property right to the Townsend stock even as they have refused to turn the stock over.[3] An order that title be transferred "reflect[s] [the Varsames'] right of ultimate control" and "best approximate[s] past positions in the light of the basic rights of the parties." *Unicon Management,* 366 F.2d at 204 (order enjoining plaintiff management company from participating in management and operation of corporation's department served to maintain rather than disturb status quo).

Nor is a heightened showing required on the theory that the order would render a trial on the merits largely or in part meaningless, even though the injunctive relief granted might in theory be a substantial part of any final relief granted in this case. An interim order granting the Varsames' title to the Townsend stock and, with it, the right to manage and control the Manida Street Property, serves merely to protect their rights pending a final determination of the merits. *See Eng,* 849 F.2d at 82; *cf. Abdul Wali,* 754 F.2d at 1016 (preliminary injunction with effect of granting disclosure of report would moot trial on the merits concerning entitlement to same report). If the Mangi Defendants ultimately prevail they will not be prevented from obtaining a meaningful remedy.

The Varsames have shown a more than fifty percent likelihood of success on the merits of their claim to be entitled to the Townsend stock, and are thus entitled to preliminary injunctive relief. Moreover, even if the standard of "substantial likelihood of success" were deemed to apply, that heightened standard is also satisfied. The Mangi Defendants have conceded the essential fact with respect to the issue of entitlement to the stock, namely, the Varsames' property interest therein. Although the Mangi Defendants have at oth-

er points in this litigation also claimed that they and not the Varsames are entitled to the stock, such contentions do not obviate the significance of this recent concession. The Court does not here reach the merit of those other claims, nor attempt to resolve what are arguably inconsistencies in the Mangi Defendants' pleadings. The only conclusion reached here is that this critical concession by the Mangis, along with the other record evidence, makes a sufficient showing of the Varsames' likelihood of success under either standard.

### C. *Hardship To The Mangi Defendants*

Although it is not necessary that the balance of hardships tip decidedly in the Varsames' favor because it has been established that they are sufficiently likely to succeed on the merits, the Court makes the following observation as to the possibility of hardship to Mangi. *See Lichtenberg v. Besicorp Group Inc.,* 43 F.Supp.2d 376 (S.D.N.Y.1999). Mangi insists that he must retain control over Townsend and the Manida Street Property to protect his interest as the guarantor for $2.7 million, and prevent the harm of being called upon to pay that sum. As explained above, Mangi has a contingent liability. Thus, it must first be noted that Townsend is the primary obligor. Any obligation Mangi has will become enforceable only if the loans are defaulted upon and if there is an entry of judgment against the primary obligor. Moreover, in the event that the guaranty is enforced, Mangi may then pursue his remedies against Townsend and the Varsames for the amount to be paid. *See, e.g., Fredericks v. Shapiro,* 160 F.R.D. 26, 28 (S.D.N.Y.1995). The harm which Mangi alleges will befall him is both contingent upon a series of other events which may or may not occur and is not without possibility of redress. The irreparable injury of deprivation of the Varsames' interest in real property, weighed against the

---

**3.** The Mangi Defendants have offered to turn the stock over only on condition that Mangi's name be removed as guarantor of the loan.

For purposes of the analysis here, attaching such a condition has the same effect as a blanket refusal.

speculative possibility of harm alleged by Mangi, tips the balance of hardships in the Varsames' favor.

### Conclusion

For the reasons set forth above, the motion for appointment of a receiver is denied and the motion for a preliminary injunction granting the Varsames possession of the Townsend stock and, therefore, the right to manage and control Townsend and the Manida Street Property, is granted. The Varsames are directed to settle the injunctive order on notice.

It is so ordered.