[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

------------------------
No. 95-8944
------------------------
D.C. Docket No. 93-CV-2811

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/28/98
THOMAS K. KAHN
CLERK

ROBERT STERLING, JR.; HERBERT HUTNER, et al.,

Plaintiffs-Appellants,
Cross-Appellees,

MARY WYMAN STONE FRASER, et al.,

Intervenors-Plaintiffs,

WILLIAM T. MARTIN; PETER CHAPAUT;
BRENT BUMPERS,

Intervenors-Plaintiffs,
Appellants,

versus

RICHARD STEWART; ROBERT FISHER, et al.,

Defendants-Appellees,

TRANSIT SALES AND SERVICE, INC.,

Intervenor.

------------------------
No. 95-8946
------------------------
D.C. Docket No. 94-CV-3-GET

ROBERT STERLING, JR.; HERBERT HUTNER, et al.,

Plaintiff-Appellants,
Cross-Appellees,

MARY WYMAN STONE FRASER;
LAURA LAWTON STONE FRASER, et al.,

Intervenors-Plaintiffs,

versus

RICHARD STEWART; ROBERT FISHER, et al.,

Defendants-Appellees,

WILLIAM T. MARTIN; PETER CHAPUT, et al.,

Intervenor-Defendants,<br>Cross-Appellants.

------------------------
No. 95-9001
------------------------
D.C. Docket No. 93-CV-2811

ROBERT STERLING, JR.; et al.,

Plaintiff-Appellees,

MARY WYMAN STONE FRASER;<br>
LAURA LAWTON STONE FRASER, et al.,

Intervenors-Plaintiffs,

FRASER FAMILY TRUST; WILLIAM T. MARTIN, et al.,

Intervenors-Plaintiffs,<br>Appellees-Cross-Appellees,

versus

RICHARD STEWART; ROBERT FISHER, et al.,

Defendants-Cross-Appellants,

TRANSIT COMMUNICATIONS, INC.,<br>
TRANSIT COMMUNICATIONS, SERVICES, LP, et al.,

Defendants-Appellants,

TRANSIT SALES AND SERVICE, INC.,

Intervenor, Defendant-Appellant.

2

Appeals from the United States District Court for the
Northern District of Georgia
**(October 28, 1998)**

Before BARKETT, Circuit Judge, and GODBOLD and GOODWIN[*], Senior Circuit Judges.

GOODWIN, Senior Circuit Judge:


Robert Sterling and other plaintiffs (together "Sterling") appeal the district court's approval of a settlement terminating their derivative suit. They object that the district court erred in appointing a receiver, realigning the corporations as plaintiffs, and approving an unfair settlement. The Defendants request, on cross-appeal, that should this court reverse and remand on any issues, that it consider whether the district court erred in not dismissing the plaintiffs as parties and in ruling certain privileged documents admissible. We affirm.[1]


## I. BACKGROUND

Digital TranService Corporation ("DTC") is a long dormant Delaware corporation, with no current officers or directors and with a voided charter. DTC, however, owns all of the stock of Digital Communications Limited ("DCL"), a Georgia corporation.

---

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]The case was originally argued on March 11, 1998. Submission was vacated on March 25, 1998, and the cause was referred to settlement staff for processing as a possible candidate for settlement. Mediation failed, and the case was resubmitted for consideration on September 10, 1998.

While DCL is currently insolvent, it possesses interests in other operating entities. We will refer to DTC and DCL collectively as the "Corporations."

The Appellants consist of preferred and common shareholders of DTC. Two separate actions were commenced by Robert Sterling, Jr., a special preferred shareholder of DTC, and by Mr. Sterling and twelve other debenture holders of DCL. The first of these actions (the "Preferred Shareholder Action") asserts both derivative claims on DTC's behalf and direct claims against Richard Stewart, an officer and director of the Corporations; Robert Fisher, an attorney for the Corporations; Fisher Financial Corporation; Charles Fraser, DCL's only other director; and various other businesses (collectively, "Stewart Defendants"). Sterling alleges that Stewart and Fisher stripped the Corporations of all their assets and misappropriated corporate opportunities, and asserts common-law and statutory claims for breach of fiduciary duty, breach of contract, fraud, and conversion, as well as federal law claims under RICO, 18 U.S.C. § 1962(c)&(d). The derivative claims are also the subject of a separate appeal by William T. Martin, D. Brent Bumpers, and Peter L. Chaput, three shareholders of DTC common shares (the "Martin Plaintiffs"), who had intervened in the Preferred Shareholder Action. The appeals of the Sterling and Martin Plaintiffs raise common issues of whether the district court erred in approving an improper settlement of the derivative claims by an improperly appointed receiver. Currently, only the derivative claims remain in dispute, for the district court granted summary judgment to the Stewart Defendants dismissing the direct claims in the Preferred Shareholder Action, and the second action (the "Debentureholder Action") settled during the pendency of this appeal.

The Stewart Defendants retained the law firm of Rogers and Hardin as counsel, and, for the Corporations, hired Bondurant, Mixson and Elmore as counsel (the "Bondurant Firm"), which had previously advised Stewart and Fisher of their fiduciary obligations to DCL affiliates. The Bondurant Firm moved the court for the appointment of an independent, special litigation committee after receiving conflicting directives from DCL directors Stewart and Fraser. The final motion requested, however, a "special master," and the district court appointed what it called a "managing receiver,"[2] J. Ralph Beaird, Esq., former Dean of the University of Georgia School of Law. The court gave Beaird all the power necessary to manage the litigation, including the power to employ, advise, and direct corporate counsel as well as the authority to receive, consider, and make recommendations regarding settlement offers.

In his investigation, Beaird sent a 98-item questionnaire to all parties soliciting information, which some of the plaintiffs chose not to answer. Beaird also met with all counsel, interviewed Stewart, Fraser, and Fisher, and reviewed numerous documents produced by discovery. On the basis of this investigation, Beaird submitted a 75-page document outlining a proposed settlement and moved that the Corporations be realigned as plaintiffs. The district court, after a fairness hearing held on May 1, 1995, approved the settlement of the corporate claims, and concluded that the settlement substantially exceeded a fair and adequate return on the Corporations' claim. The plaintiffs' appeals followed.

---

[2]A receiver is a neutral court officer appointed by the court, usually to "take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of . . . undertaking any [] appropriate action." 12 Charles Wright & Arthur Miller, Federal Practice and Procedure § 2981, at 5 (1973).

## II. STANDARD OF REVIEW

Federal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction. National Partnership Inv. Corp. v. National Housing Dev. Corp., 153 F.3d 1289, 1291-92 (11th Cir. 1998). This court reviews the appointment for abuse of discretion. SEC v. First Fin. Group, 645 F.2d 429, 440 (5th Cir. 1981).

Whether the district court applied the correct burden of proof for the settlement is a question of law reviewed de novo. Reich v. Davis, 50 F.3d 962, 964 (11th Cir. 1995). "Determining the fairness of the settlement is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion." Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).

## III. DISCUSSION

On appeal, Sterling contends that the district court erred (1) in appointing a managing receiver instead of a special litigation committee; (2) in realigning the Corporations as plaintiffs in the derivative suit; and (3) in concluding that Beaird conducted an adequate, independent investigation that yielded a fair settlement. First, Sterling argues that the district court erred in appointing a receiver, which is guided by federal law, rather than a special litigation committee, which is likely guided by state law.[3] In the instant case, Beaird represented the Corporations, pursued the claims he thought meritorious, and offered a proposed settlement

---

[3]See, e.g., Crown Crafts, Inc. v. Aldrich, 148 F.R.D. 547, 548-49 (E.D.N.C. 1993) (choosing state law as governing the appointment of a special litigation committee). A special litigation committee represents the corporation. When directors are accused of wrongdoing in a derivative action, they typically appoint a disinterested person or persons to evaluate the merits of the claim and pursue it if worthwhile.

to extinguish the case. Second, Sterling objects to the district court's decision to realign the Corporations as plaintiffs, arguing that realignment was improper because the Corporations were still antagonistic to the Stewart Defendants and because they appeared to be in collusion with one another.[4]

Third, Sterling advances the argument that the district court did not evaluate the proposed settlement with the appropriate level of scrutiny, which it would have applied if a special litigation committee were appointed instead. While receivers benefit from the general presumption that district courts favor settlement, see In re Chicken Antitrust Litigation, 669 F.2d 228, 238 (5th Cir. 1982), courts usually subject settlements proposed by special litigation committees to more rigorous scrutiny, as established by state law, see Joy v. North, 692 F.2d 880, 888-89 (2d Cir. 1982). Sterling points to the stringent standards of Delaware law, and contends that the court should have applied "its own independent business judgment" and a higher standard of review. Zapata Corp. v. Maldonado, 430 A.2d 779, 789 (Del. 1981); see Aronson v. Lewis, 473 A.2d 805 (Del. 1984).

The Stewart Defendants, on the other hand, contend that the Beaird was properly appointed, and that he acted appropriately in his investigative capacity. The district court recognized that Beaird effectively performed as a special litigation committee. See District Court Order of November 15, 1994, at 8 ("[a]lthough appointed by the court, the receiver's role is analogous to that of a special litigation committee because he is independent and authorized to

---

[4]Sterling erroneously asserted that the district court had substituted the Corporations in place of the shareholders upon realignment. In fact, the district court unambiguously denied the Corporations' motion to substitute and dismiss the other plaintiffs. See District Court Order of October 27, 1994, at 5.

7

act on behalf of the Corporations"). Next, the Stewart Defendants argue that once Beaird decided to pursue the derivative claims against the defendants and negotiate a settlement offer, the Corporations were properly realigned as plaintiffs, considering that no evidence of collusion between Beaird and the defendants was ever established. Finally, Stewart asserts that the district court did not err in approving the settlement and in finding Beaird's investigation as unbiased and adequate and the settlement as fair.

Before turning to the issues of the receiver's appointment and the Corporations' realignment, we must first evaluate whether the district court erred in approving the settlement offer, and whether appointing a special litigation committee would have necessarily produced a different result. Sterling asserts that to make such a determination, the court should first inquire into the independence and good faith of the receiver and the adequacy of his investigation. Then Sterling requests that the court determine whether the settlement offer was fair, under Delaware law. We address Sterling's concerns in turn.

A.    *Beaird's Investigation*

Sterling argues that Beaird's use of the Bondurant Firm produced a biased result, because Bondurant had represented the defendants in a prior matter and thus possessed a potential conflict of interest. See Stepak v. Addison, 20 F.3d 398 (11th Cir. 1994) (suggesting that potential for lingering allegiance by corporate counsel or theoretical conflict of interest requires disapproval of dismissal of claims). Stepak is distinguishable, however, because this case involves an effort to recover on, rather than dismiss, corporate claims, and because the Bondurant Firm had not represented the defendants in the same subject matter of the corporate

8

claims, as did counsel in <u>Stepak</u>.[5]  Thus, <u>Stepak</u> is not controlling, and Sterling must show an actual conflict of interest or evidence of bias to prevail, <u>see</u> <u>In re Chicken Antitrust Litig.</u>, 669 F.2d 228, 237 (5th Cir. Unit B 1982) ("It is up to the objectors [to the choice of counsel] to point to a trade-off of their rights and actual prejudice.").  Because Sterling offers no such direct evidence, Beaird's choice of the Bondurant Firm does not mandate reversal.

Sterling also contends that Beaird acted in bad faith by insulating his investigation from the plaintiffs, and that he conducted an inadequate investigation.  We find that these assertions lack merit, for the district court permitted the plaintiffs to conduct Beaird's deposition, limited only by the attorney-client privilege, and found that the receiver engaged in a diligent investigation of the case.  <u>See</u> District Court Order of November 15, 1994, at 3.  Absent any concrete evidence proving otherwise, we conclude that Beaird acted in good faith and that the investigation was adequate.

B.     *Fairness of the Settlement*

Having concluded that Beaird was independent, acted in good faith, and conducted an adequate investigation, we now address Sterling's next concern, whether the district court erred in determining that the settlement was fair.

Sterling contends that Beaird underestimated the legal merit of the corporate claims.  Sterling, however, fails to rebut Beaird's central premise, that the Corporations' likelihood of success for the usurpation of corporate opportunity claim was very low.  The Corporations were in a poor financial state, and, in Beaird's opinion, did not have the financial

---

[5]Bondurant did represent the defendants in a previous dealing, but the district court properly found that it "did not involve the same subject matter of the challenged transaction in this case." District Court Order of June 6, 1995.

9

ability to pursue the corporate opportunity. As he stated in his report, Beaird relied primarily on the fact that the opportunity was not feasible, and the Corporations' risk of losing at trial was too high. As the district court properly concluded: "The claims based on the [usurpation of corporate opportunity] probably have some worth, but the Receiver has shown that the defendant's defenses as to those claims also have real merit." District Court Opinion of June 6, 1995, at 25.

Sterling also argues that the district court erred because it did not apply "vigorous scrutiny" in evaluating Beaird's settlement decision as directed by Delaware law, Joy v. North, 692 F.2d 880 (2d Cir. 1982); see, e.g., Zapata Corp. v. Maldonado, 430 A.2d 779 (Del. 1981), but instead relied on a less stringent mandate from Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977) (stating that "the District Court must find that the settlement is fair, adequate, and reasonable") and the six-factor test for fairness under Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984).[6] For further support, Sterling points to language in the district court's order stating that the court did not believe that it was bound by the more stringent Delaware standard because those cases dealt with the dismissal, not settlement, of corporate claims.

However, it appears that the court held Beaird's investigation and settlement decision to a high burden of proof, much higher than that set forth in Cotton. For instance, the district court took notice of the extensive document discovery, depositions, and interviews that Beaird conducted, and the opportunity Beaird offered to all parties to respond to a

---

[6]In evaluating whether a settlement is fair, the court should examine the following factors: (1) the likelihood of success; (2) the range of possible discovery; (3) the point on or below the range of discovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. See Bennett, 737 F.2d at 986.

comprehensive questionnaire. On the other hand, in Cotton the court approved a settlement even though little formal discovery had been conducted. See 559 F.2d at 1332. Furthermore, the district court carefully reviewed Beaird's analysis of the underlying facts, the defendants' defenses, and the appellants' presentations at the fairness hearing to conclude that the settlement decision was indeed fair.[7]

Thus, the district court did not err by applying too lenient a standard in reviewing the adequacy of the investigation and the fairness of the settlement. In addition, the court did not abuse its discretion in concluding that the settlement decision was fair, because of the apparent low likelihood of the corporate claims' success. Consequently, the district court did not err in approving Beaird's settlement decision as independently and adequately investigated and fair to the plaintiffs.

C.    *Realignment of Corporations*

Considering that Beaird, as representative of the Corporations, was free from conflict of interest or collusion, we agree with the district court's decision to realign the Corporations as plaintiffs. This court recognizes that it should retain a corporation as a party defendant only where the corporation has been found to be "actively antagonistic" to the plaintiffs' interest. Duffey v. Wheeler, 820 F.2d 1161, 1163 (11th Cir. 1987). No evidence indicates that Beaird or the Corporations were "actively antagonistic" against the shareholders' interests, or contradicts the district court's finding that the Defendants did not show any "hint of collusion or that the Corporations [would] not adequately pursue the corporate claims in good

---

[7]The district court found that any settlement recovery above 15% of maximum recovery would be fair, so it concluded that Beaird's settlement for approximately 25% of the maximum recovery was fair, adequate, and reasonable. District Court Order of June 6, 1995, at 34-35.

11

faith." District Court Order of October 27, 1994, at 5. Accordingly, the district court did not err in deciding to realign the Corporations as plaintiffs.

D.      *Receiver's Appointment*

Given our conclusion that Beaird acted properly, and that the district court reviewed his investigation and settlement decision with sufficient scrutiny, we need not decide whether the district court erred in appointing a receiver instead of a litigation committee, for any such error has been rendered harmless.

We affirm the trial court's judgment, and hold that the issues raised in Stewart's cross-appeal are moot.

AFFIRMED.