[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16068
Non-Argument Calendar
_____

D.C. Docket No. 9:03-cv-80612-KAM

JOHN W. BENDALL, JR.,
MARTIN GARVEY,

Interested Parties-Appellants,

versus

LANCER MANAGEMENT GROUP, LLC,
LANCER MANAGEMENT GROUP II, LLC, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 9, 2013)

Before TJOFLAT, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

John Bendall, Jr., and Martin Garvey ("Appellants"), proceeding pro se, appeal the denials of their respective motions for the award of attorney's fees and costs stemming from a civil enforcement action initiated by the Securities and Exchange Commission ("SEC") for violations of federal securities laws. After careful review, we affirm.

## I.    Background

On July 8, 2003, the SEC commenced an enforcement action in federal court against Michael Lauer, Lancer Management Group, LLC ("Lancer"), and Lancer Management Group II, LLC ("Lancer II), as well as several hedge funds that these parties managed including Lancer Offshore, Inc. ("Offshore"); Lancer Partners L.P. ("Partners"); OmniFund, Ltd. ("OmniFund"); LSPV, Inc. ("LSPV"); and LSPV, LLC ("Partners LSPV"), alleging multiple counts of federal securities fraud dating back to March 2000. Garvey maintained a 10% interest in Lancer, was the manager of Partners, and handled many functions for Lancer, Lancer II, and the various investment funds. Bendall was a member of the Board of Directors of Offshore and OmniFund. On July 10, 2003, the district court entered an order appointing Marty Steinberg, a Miami attorney, as Receiver (the "Receiver") for Lancer, Lancer II, Offshore, OmniFund, LSPV, and Partners LSPV, (collectively

2

the "Receivership Entities" or "Entities").  The Receiver was tasked to, among other things, take immediate possession of all property and assets belonging to any of the Entities, investigate the Entities' financial affairs, and make or authorize payments and disbursements from the Entities' funds and assets.

Bendall acknowledged in his motion for fees that he began accruing legal fees related to his role as director of Offshore and OmniFund as early as September 24, 2003.  Garvey similarly began incurring legal fees related to similar suits as early as July 18, 2003.

On January 8, 2004, the district court entered a case management order, upon motion by the Receiver, indicating that "[a]ll persons or entities with claims or demands against any Receivership Entity must present their claims to the Receiver in accordance with this Order."  The district court specifically noted that the claims bar date was April 1, 2004.  The district court directed the Receiver to provide notice of the claims bar date, either via mail or publication notice, on or before January 23, 2004.[1]  The case management order also stated:

> All creditors, claimants, and other persons failing to present claims and supporting proof to the Receiver postmarked on or before the claims bar date will be forever barred from participating in any distribution of the assets of the Receivership Entities and shall be further barred from asserting set-offs or recoupment of any kind whatsoever against any Receivership Entity or its assets.

---

[1]    It is undisputed that the Receiver provided proper notice, including specifically serving Garvey through his attorney.

3

As relevant to the instant appeal, Bendall filed a motion seeking the award of attorney's fees and costs on November 18, 2011, and Garvey filed a counseled motion for attorney's fees and costs on March 1, 2012.  Appellants argued that they were entitled to indemnification from the Receivership Entities for attorney's fees and costs based on provisions of Offshore's Articles of Association[2] and Private Placement Memorandum ("PPM").[3]  Garvey specifically argued that he was entitled to reimbursement of $564,112.13 incurred while defending himself

---

[2]    Offshore's Articles of Association provides:

> Subject to the provision of the Act, every Director, Secretary, and other Officer or servant of the Company shall be indemnified by the Company against, and it shall be the duty of the Directors out of the funds of the Company to pay, all costs, losses, and expenses which any such Officer or servant may incur or become liable for by reason of any contract entered into, or act or thing done by him as such Officer, Director, Secretary or servant, or in any way in the discharge of his duties, and the amount for which such indemnity is provided shall immediately attach as a lien on the property of the Company, and have priority as between the Members over all other claims, unless the same happened through his own willful negligence, willful default, fraud or dishonesty.

[3]    Offshore's PPM reads:

> The Investment Management Agreement provides that the Fund will indemnify and hold harmless the Investment Manager and its members, and their respective affiliate from and against any loss or expense suffered or sustained by the Investment Manager or its members or their respective affiliates resulting from the performance or non-performance of the Investment Manager's duties under the Investment Manager Agreement, including without limitation any judgment, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceedings; provided, however, that such person acted honestly and in good faith and reasonably believed that its conduct was in the best interest of the Fund and, in the case of criminal proceedings, such person had no reasonable cause to believe its action was unlawful.

4

against related civil and criminal charges between 2003 and 2009.  Bendall argued that he was entitled to reimbursement of $51,719.68 incurred while defending himself in two related civil lawsuits.  The district court denied both motions, concluding that Appellants were not entitled to indemnification because they failed to file a proof of claim, contingent or otherwise, by the claims bar date.

In the instant appeal, Appellants argue that the district court erred by denying their motions for attorney's fees and costs, based on the fact that they failed to file a proof of claim by the court-ordered claims bar date of April 1, 2004.  They maintain that, because they were legally covered by explicit contractual indemnification provisions, they were entitled to reimbursement of their attorney's fees and costs incurred in connection with Lancer-related litigation as a matter of law.  They also counter that the claims bar date did not apply to them because they were not investors or creditors of any of the Receivership Entities, and the indemnification provisions did not contain bar dates.

## II.    Analysis

"The district court has broad powers and wide discretion to determine relief in an equity receivership."  S.E.C. v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992).  This discretion derives from the inherent powers of an equity court to fashion relief.  Id.  "[A]ny action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear

showing of abuse." S.E.C. v. Safety Fin. Serv., Inc., 674 F.2d 368, 373 (5th Cir. 1982) (quoting S.E.C. v. Ark. Loan & Thrift Corp., 427 F.2d 1171, 1172 (8th Cir. 1970)) (internal quotation marks omitted); see also Sterling v. Stewart, 158 F.3d 1199, 1201 (11th Cir. 1998) ("Determining the fairness of the settlement [in an equity receivership] is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion.").

Given that a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors, we will apply cases from the analogous context of bankruptcy law, where instructive, due to limited case law in the receivership context. See, e.g., Elliott, 953 F.2d at 1567, 1572-73 (analyzing bankruptcy law in the receivership context); Marion v. TDI Inc., 591 F.3d 137, 148 (3d Cir. 2010) (same); Fidelity Bank, Nat'l Ass'n v. M.M. Grp., Inc., 77 F.3d 880, 882 (6th Cir. 1996) (finding it "appropriate and helpful to refer to the rules governing appellate standing in bankruptcy proceedings" when no case law existed regarding the rules in a receivership action); Unisys Fin. Corp. v. Resolution Trust Corp., 979 F.2d 609, 611 (7th Cir. 1992) (referring to principles of bankruptcy law to determine whether a creditor had an enforceable security interest in the property of a receivership estate established under federal banking laws); cf. S.E.C. v. Forex Asset Mgmt. LLC, 242 F.3d 325, 331-32 (5th Cir. 2001) (involving SEC

investigation against investment company alleging securities fraud, in which the court concluded that it was unnecessary to consider "analogous bankruptcy law" because there was existing circuit precedent that resolved the issue in that non-bankruptcy case).  Here, as the district court did, we look to guidance from the bankruptcy code to determine the meaning of "claim" in the context of the claim management order.  Because we hold that Appellants' claims existed prior to April 1, 2004, their claims for attorney's fees are barred by the case management order.

Claims arising from contracts executed prior to a bankruptcy constitute "claims" within the meaning of section 101(5) of the Bankruptcy Code whether or not a cause of action has accrued at the time of the bankruptcy under otherwise-applicable non-bankruptcy law.  See 11 U.S.C. § 101(5).  Under the Bankruptcy Code, the term "claim" is broadly defined as a

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or . . . right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Id. § 101(5)(A)-(B).  When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, a contingent right to payment exists upon the signing of the agreement.  See In re All Media Props., Inc., 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), aff'd, 646 F.2d 193 (5th Cir. 1981), overruled

on other grounds by In re Trusted Net Media Holdings, LLC, 550 F.3d 1035 (11th Cir. 2008).[4]  Contingent rights to payment need not be currently enforceable in order to constitute a claim.  See, e.g., Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp., 58 F.3d 1573, 1576 (11th Cir. 1995) ("The legislative history of the [Bankruptcy] Code suggests that Congress intended to define the term claim very broadly under § 101(5), so that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." (citation and internal quotation marks omitted)); see also In re Tanner Family, LLC, 556 F.3d 1194, 1196 (11th Cir. 2009) ("By making the terms 'debt' and 'claim' coextensive, Congress has 'adopt[ed] [ ] the broadest possible definition of 'debt.'" (quoting Penn. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 558, 564, 110 S. Ct. 2126, 2130, 2133 (1990))).  Accordingly, "[t]hat the claim remained contingent, unliquidated and unmatured at the time of the filing of the chapter 11 petition is immaterial to [creditor's] obligation to file a timely proof of claim under the Bankruptcy Code."  Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 9 n.9 (1st Cir. 1992).

We find the Bankruptcy Code's definition of "claim" instructive to our resolution of the instant appeal and, applying this broad definition, Appellants

---

[4]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

possessed a contingent claim for attorney's fees and legal costs under the indemnification provisions contained in Offshore's Articles of Association and PPM prior to the expiration of the claims bar date.  Because Appellants were clearly "persons" attempting to assert a "claim" against the Receivership Entities, they were bound by the district court's case management order and, as such, were required to file proof of claims prior to the claims bar date.

Bendall filed his motion seeking award of attorney's fees and costs on November 18, 2011, and Garvey filed his counseled motion for same on March 1, 2012.  Both motions were well after the claims bar date of April 1, 2004.  The fact that the full amount of Appellants' legal fees was unknown at this date does not justify the failure to have filed at least a contingent claim for attorney's fees, especially when it is undisputed that (1) both Appellants incurred related attorney's fees—for which they would subsequently seek indemnification—well before the April 1, 2004, claims bar date, and that (2) both Appellants had proper notice of the case management order.  Accordingly, the district court properly denied Appellants' motions for attorney's fees and legal costs.[5]

### III.    Conclusion

After thorough review of the record and the parties' briefs, we affirm.

---

[5]    Appellants only argue on appeal that they timely filed their claims.  They do not argue on appeal that they should be permitted to file an untimely claim.  Therefore, Appellants have waived this argument.  See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (internal citation omitted)).

**AFFIRMED.**