[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15228
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cv-61984-AOR


200 LESLIE CONDOMINIUM ASSOCIATION INC.,
a Florida corporation,

Plaintiff-Appellant,

versus

QBE INSURANCE CORPORATION,
a Pennsylvania corporation,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 26, 2015)

Before HULL, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

After a bench trial, plaintiff 200 Leslie Condominium Association ("200 Leslie") appeals the district court's entry of final judgment in favor of defendant QBE Insurance Corporation ("QBE") in 200 Leslie's action seeking an appraisal of damages allegedly sustained as a result of Hurricane Wilma in 2005.

After a review of the record and the parties' briefs, we affirm.

## I. BACKGROUND

### A.    QBE Issues a Property Insurance Policy to 200 Leslie

Plaintiff-appellant 200 Leslie is a condominium association that owns and operates a property located in Broward County, Florida.  The property includes a multi-story, Y-shaped building, whose units have paned glass windows and balconies with sliding doors.

Defendant-appellee QBE is a Pennsylvania corporation engaged in the business of selling property insurance, with a principal place of business in New York.

QBE issued to 200 Leslie a commercial property insurance policy (the "policy") effective June 17, 2005 through June 17, 2006.  The policy included a hurricane deductible of $610,039.

The policy provided that, if a dispute arose regarding the value of a claim, the dispute would be resolved by a three-person appraisal panel, with each party selecting one appraiser and the two appraisers selecting a neutral umpire.  The

2

policy imposed a number of duties on 200 Leslie in the event of a loss or damage to the covered property.  Three duties are relevant to this case: (1) to provide, within 60 days of a request by QBE, a sworn proof of loss containing information requested by QBE to investigate any claim; (2) to complete, at QBE's request, "inventories of the damaged and undamaged property," including "quantities, costs, values, and amount of loss claimed"; and (3) to submit to an examination under oath, as reasonably required, regarding any matter relating to the insurance or the claim.

## B.    2005 Hurricane Damages 200 Leslie's Property

On October 24, 2005, Hurricane Wilma made landfall in southern Florida.[1] Three days later, 200 Leslie notified QBE that it sustained a loss from the storm by submitting a notice that described the loss and damage as "tennis court w/ light poles; light poles throughout the building; pool fence."

A third-party managing agent, which handled insurance matters for QBE, assigned 200 Leslie's claim to a contractor.  The contractor engaged a sub-contractor to conduct a physical inspection of 200 Leslie's property.

On November 16, 2005, the sub-contractor inspected the property, received some photographs from 200 Leslie, and took additional photographs himself.  The

---

[1]Although Hurricane Wilma made landfall on Florida's Gulf Coast, the storm maintained hurricane strength as it moved across southern Florida, and the storm's eye passed over nearly all of Broward County, which is on the Atlantic Coast.  See National Weather Service Weather Forecast Office, "Hurricane Wilma," http://www.srh.noaa.gov/mfl/?n=wilma (last visited June 25, 2015).

photographs identified the property and depicted certain damage, including a suspended ceiling tile in a gym common area; damage to two windows in the gym; and damage to a window in one particular unit.

After receiving the sub-contractor's report, the contractor informed QBE's third-party managing agent that 200 Leslie's estimated damages were $250,000. On December 9, 2005, the managing agent advised 200 Leslie that the loss amount was below its policy deductible and that QBE would pay no benefits.

## II. 200 LESLIE FILES SUIT IN 2010

The matter appeared closed, as 200 Leslie took no steps to challenge the damage estimate after hearing from QBE's managing agent. But nearly five years and 30 Atlantic hurricanes later, 200 Leslie filed this action. We recount the facts surrounding the initiation of this lawsuit.

### A.    200 Leslie's Third Amended Complaint in 2012

In the summer of 2010, 200 Leslie's current counsel, Jeffrey Golant, approached the principal of a public adjustment and loss consulting company (the "public adjuster") with information regarding several condominium associations that did not receive payments from QBE for claims related to the 2005 Hurricane Wilma.

The public adjuster approached 200 Leslie, and 200 Leslie allowed him to inspect the building's roof and certain units that 200 Leslie identified as having

4

problems with their windows and sliding glass doors.  On June 10, 2010, 200 Leslie entered into a contract with the public adjuster's company for its services on a 20-percent contingency fee.  Thereafter, 200 Leslie retained current counsel Golant to represent it in this action for a 40-percent contingency fee.

On October 18, 2010, 200 Leslie filed its complaint against QBE in the United States District Court for the Southern District of Florida.  The following day, and nearly five years after the claim seemed to be settled, 200 Leslie notified QBE that it was challenging the prior assessment and demanding an appraisal of its losses from the 2005 Hurricane Wilma.

Eventually, on July 12, 2012, QBE filed a Third Amended Complaint.  In Count I, 200 Leslie sought a judgment declaring that glass windows and sliding glass doors that provide access to a single condominium unit were covered under the policy.  In Count II, 200 Leslie sought a judgment declaring that it was entitled to have the amount of its Hurricane Wilma damage determined through the appraisal process identified in the policy.

**B.    QBE Denies 200 Leslie's 2010 Claim**

While its lawsuit was pending, 200 Leslie provided QBE with a sworn Statement in Proof of Loss (the "proof of loss") on a form supplied by QBE.  The proof of loss was executed by Richard Vilain, a member of 200 Leslie's board of directors.  In the proof of Loss, 200 Leslie stated that its "whole loss and damage"

5

from Hurricane Wilma was $10,934,677.49.  However, 200 Leslie attached cost estimates for roof and window replacements, which totaled $10,934,677.49 and $7,907,404.43, respectively.

200 Leslie altered the proof of loss form supplied by QBE.  The proof of loss form supplied by QBE also included a statement that "no articles are mentioned herein or in the annexed schedules but such as were destroyed or damaged at the time of said loss" (emphasis added).  Counsel Golant struck a line through that language, and Vilain placed his initials next to the marking.  Golant struck the language because he believed that it was not an accurate description of the benefits under the policy given that, based on his interpretation of the policy, 200 Leslie was entitled to certain benefits beyond the replacement value of items that were directly damaged by the hurricane.  Specifically, Golant concluded that it was not possible to give a figure for 200 Leslie's "whole loss and damage" while also stating that the figure included only damaged property.

After 200 Leslie submitted the altered proof of loss, QBE's third-party managing agent requested that 200 Leslie provide an inventory of damaged and undamaged property, pursuant to the policy's terms.  By the time of the bench trial in the district court, QBE had not received from 200 Leslie the inventory of damage and undamaged property that it had requested.  Furthermore, the attachments to the proof of loss do not specify which windows were damaged and

6

which were not.  Indeed, nobody associated with 200 Leslie knew which windows or sliding doors were damaged and which were not damaged.  This impacted the work of Andrew Bertucci, the claims adjuster working for QBE's third-party managing agent in 2010.

QBE also sent 200 Leslie a letter demanding an examination under oath of the 200 Leslie representative with the most knowledge of (1) the quantum of loss; (2) the cause of the loss; (3) the maintenance history of the buildings; (4) the preparation of the claim; (5) any repairs of the damaged property and any estimates for repair; and (6) whether 200 Leslie or the owners of individual units are responsible for repairing or replacing windows and sliding glass doors that provide access to single units.

In response, 200 Leslie produced Vilain, who was then the president of 200 Leslie's board, for an examination under oath.  In his only preparation for the examination, Vilain met with Golant and reviewed the proof of loss for approximately five minutes.  As a result, Vilain did not know the answers to many of the questions asked at the examination.

On September 21, 2012, while 200 Leslie's Third Amended Complaint was pending in the district court, QBE sent to 200 Leslie a letter denying its claim in the entirety.  QBE based its decision on, inter alia, its conclusion that 200 Leslie failed to comply with its post-loss obligations.

7

## III. THE DISTRICT COURT'S FINDINGS OF FACTS AND CONCLUSIONS OF LAW

On August 28, 2013, and after a bench trial, the district court issued its findings of fact and conclusions of law as to Count II of the Third Amended Complaint, which was the count in which 200 Leslie sought a declaratory judgment that it was entitled to an appraisal of its Hurricane Wilma damages.[2]

### A.    Findings of Fact

As to the altered proof of loss form, the district court found that "200 Leslie did not send QBE a sworn proof of loss on a form provided by QBE containing information requested by QBE, as required by the QBE policy."  The district court noted that "the problem created by the inclusion of undamaged property in the $10,934,677.49 Proof of Loss figure was not remedied by striking the subject language because, due to such inclusion, the figure did not actually equate to 200 Leslie's 'whole loss and damage.'"  The district court therefore "d[id] not find Golant's explanation for striking out the language in the Proof of Loss form . . . to be reasonable or justified."

As to the inventory of damaged and undamaged property, the district court found that "200 Leslie did not provide QBE with complete inventories of the damaged and undamaged property, . . . as required by the QBE policy."  The

---

[2]The district court dismissed as moot Count I, which sought a judgment declaring that glass windows and sliding glass doors that provide access to a single condominium unit were covered under the policy.

district court further found that, "[w]ithout the information regarding the damaged/undamaged breakdown," Bertucci, the claims adjuster working for QBE's third-party managing agent, "could not determine what [QBE] was required to pay under the terms of the QBE policy; and the distinction is important because it shows what needs to actually be repaired or replaced from hurricane damage."

Finally, as to the examination under oath, the district court found that Vilain, the 200 Leslie board member and representative at the examination, "did not reasonably prepare for the [examination under oath] and, as a result, did not adequately respond to QBE's inquiries regarding matters relating to the insurance or the claim . . . as required by the QBE policy."  Accordingly, the district court also found that "200 Leslie did not fully comply with the QBE policy requirement that its representative submit to examination about any matter relating to the insurance or the claim."

**B.    Conclusions of Law**

Based on its foregoing fact findings, the district court concluded that 200 Leslie failed to comply with the three post-loss obligations discussed supra: (1) the requirement that 200 Leslie provide to QBE a sworn proof of loss, (2) the requirement that 200 Leslie provide QBE with complete inventories of the damaged and undamaged property, and (3) the requirement that 200 Leslie produce its representative to submit to an examination under oath about any matter relating

9

to the insurance or the claim. Accordingly, the district court concluded that 200 Leslie breached the policy terms as to each provision.

Turning to the effect of the breaches, the district court stated that, because the three post-loss requirements were "conditions precedent to appraisal, 200 Leslie had the burden to show at trial that QBE was not prejudiced by its failure to comply with these post-loss conditions." The district court found that 200 Leslie failed to establish that no prejudice resulted from its breaches. Specifically, the district court stated, in relevant part:

> 200 Leslie did not offer any evidence at trial that QBE was not prejudiced by its breaches of the Proof of Loss, Inventories of Damaged and Undamaged Properties[,] and Examination Under Oath post-loss conditions. It did not elicit any testimony from Bertucci that QBE could go to appraisal despite these breaches. On the contrary, Bertucci's credible testimony was that appraisal is not appropriate because QBE does not know 200 Leslie's actual valuation of its Hurricane Wilma damages. According to Bertucci, without information regarding the damaged/undamaged breakdown, he could not determine what it was required to pay under the terms of the QBE policy; and the distinction is important because it shows what needs to actually be repaired or replaced from hurricane damage. Because 200 Leslie did not carry its burden of showing prejudice, it cannot avoid the conditions precedent to appraisal with which it did not comply.

The district court therefore ruled that "QBE has prevailed as to Count II of the Third Amended Complaint."

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the district court entered a separate final judgment in favor of QBE and against 200 Leslie.

10

On September 23, 2013, 200 Leslie moved for a new trial, which the district court denied.  200 Leslie timely appealed.

## II. DISCUSSION

On appeal, 200 Leslie contends that the district court erred in finding that it failed to comply with the three post-loss requirements.  In addition, 200 Leslie contends that, even if it failed to comply with the post-loss requirements, the district court erred in placing the burden on 200 Leslie to show that QBE was not prejudiced by the breach.  Rather, 200 Leslie contends, Florida law places the burden on QBE to establish that it was prejudiced for any breach to bar appraisal.

We first consider whether the district court erred in finding that 200 Leslie failed to comply with the policy's terms.  We then turn to the prejudice issue.[3]

## A.    Compliance with the Policy's Post-Loss Obligations

Although 200 Leslie contends the district court erred with regard to each of the three post-loss requirements, we need not decide whether the district court erred in finding (1) that 200 Leslie failed to comply with the requirement to submit

___

[3]We review de novo a district court's interpretation of an insurance policy.  Hegel v. First Liberty Ins. Corp., 778 F.3d 1214, 1219 (11th Cir. 2015).  Likewise, whether the district court placed the burden of proving prejudice on the correct party is a question of law subject to de novo review.  Cf. Sterling v. Stewart, 158 F.3d 1199, 1202 (11th Cir. 1998) ("Whether the district court applied the correct burden of proof [to a settlement of a class-action lawsuit] is a question of law reviewed de novo.").

However, we review the district court's underlying findings of fact for clear error.  See U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC, 749 F.3d 967, 974 (11th Cir. 2014).  "A finding of fact is clearly erroneous if, upon reviewing the evidence as a whole, we are left with the definite and firm conviction that a mistake has been committed."  Id. (quotation marks omitted).

a sworn proof of loss and (2) that 200 Leslie failed to comply fully with the requirement to produce a representative to submit to an examination under oath. Rather, we can resolve this case based solely on the district court's findings regarding 200 Leslie's obligation to provide an inventory of damaged and undamaged property.

The district court concluded that 200 Leslie's failure to submit any inventory of damaged and undamaged property constituted a breach of the post-loss inventory requirement. We agree. By refusing to submit an inventory of damaged and undamaged property, 200 Leslie failed to identify the windows, doors, and other items that QBE would have to inspect before making a determination regarding the claim.

200 Leslie contends that this Court must construe the inventory requirement as being limited to a listing of only personal property items because of the meaning of the word "inventories" and alleged ambiguity in the inventory provision's use of the word "property." Under this theory, 200 Leslie was not required to itemize parts of the building itself that were damaged (such as particular windows or doors). This argument is without merit.

First, none of the dictionary definitions supplied by 200 Leslie indicate that an "inventory" can include only personal property within a building, rather than fixtures attached to the structure, including a roof, windows, or doors. Second,

12

there is nothing ambiguous about the term "property" in the inventory provision requiring us to construe it as including only personal property.  Where the policy sought to cover only personal property, it did so by using the term "personal property."  And it did so repeatedly.  It did not do so here.

Accordingly, we conclude that the district court did not err in finding that 200 Leslie failed to comply with the policy's requirement that it submit an inventory of damaged and undamaged property.

## B.    Burden of Proving Prejudice

Turning to the prejudice issue, we begin by noting that the relevant Florida case law does not provide a clear answer as to which party bore the burden of proving or disproving prejudice in this case.  Indeed, when the issue is whether an insured may compel an appraisal despite the insured's failure to comply with the policy's terms, there are at least three possible approaches.

First, the rule could be that the trial court need not consider prejudice where the policy specifies that failure to comply with the policy's terms bars appraisal. See, e.g., U.S. Fid. & Guar. Co. v. Romay, 744 So. 2d 467, 471 (Fla. Dist. Ct. App. 1999) (en banc) ("No reasonable and thoughtful interpretation of the policy could support compelling appraisal without first complying with the post-loss obligations."); Goldman v. State Farm Fire Gen. Ins. Co., 660 So. 2d 300, 306 (Fla. Dist. Ct. App. 1995) (holding that an examination under oath was "a condition

precedent to suit" under a homeowner's policy and that the insured's failure to comply "preclude[d] an action on the policy regardless of a showing of prejudice by the insurer").

Second, the rule could be that an insured may compel an appraisal, despite its failure to comply with post-loss obligations, if the insured establishes that its failure to comply caused no prejudice to the insurance company. Cf. Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985) (holding that a presumption of prejudice arises from an insured's failure to give timely notice of a claim and that an insured thus cannot recover unless the insured proves lack of prejudice); Soronson v. State Farm Fla. Ins. Co., 96 So. 3d 949, 952–53 (Fla. Dist. Ct. App. 2012) (holding that an insured who failed to submit a timely notice of loss and a timely sworn proof of loss could not recover under a homeowner's policy because the insured did not rebut the presumption that the insurer suffered prejudice).[4]

Third, the rule could be that, where an insured fails to comply with post-loss obligations, it may nonetheless compel an appraisal unless the insurer establishes that the failure to comply caused it prejudice. For this proposition, 200 Leslie cites State Farm Mutual Automobile Insurance Co. v. Curran, though that case involved a compulsory medical examination for uninsured-motorist coverage and only three

---

[4]We note that both Macias and Soronson indicate in dicta that, in other circumstances, the burden of proving or disproving prejudice is reversed—and placed on the insurer—if the insurer claims that the insured breached a policy term, and the court determines that the term is a cooperation clause rather than a notice requirement. See Macias, 475 So. 2d at 1218; Soronson, 96 So. 3d at 952.

14

justices joined the plurality opinion on which 200 Leslie relies.  135 So. 3d 1071, 1073–74, 1081 (Fla. 2014); see also Whistler's Park, Inc. v. Fla. Ins. Guar. Ass'n, 90 So. 3d 841, 845–47 (Fla. Dist. Ct. App. 2012) (holding that the failure of an insured under a homeowner's policy to sit for an examination under oath precludes recovery only if the insurer proves prejudice).

We need not—and do not—decide this difficult issue of Florida law.  Even assuming arguendo that the district court should have placed the burden on QBE to prove that any failure to comply with the policy's terms prejudiced it, the outcome would have been the same.

QBE offered uncontroverted evidence that it was, in fact, prejudiced by 200 Leslie's failure to submit an inventory of the damaged and undamaged property.  And the district court made findings of fact that clearly demonstrate that QBE was so prejudiced.  Specifically, the district court found that, "[w]ithout the information regarding the damaged/undamaged breakdown, Bertucci could not determine what [QBE] was required to pay under the terms of the QBE policy; and the distinction is important because it shows what needs to actually be repaired or replaced from hurricane damage."  The district court also "accept[ed] as legitimate the reasons given by Bertucci why QBE needed the separate inventory of damaged and undamaged property that it had requested."

15

At trial, 200 Leslie did not introduce any facts to challenge this evidence of prejudice to QBE.  And on appeal, it points to none.  Put simply, even assuming arguendo that the district court wrongly placed the burden on 200 Leslie to show that QBE was not prejudiced, QBE nonetheless introduced evidence that affirmatively proved that it was prejudiced, and 200 Leslie failed to counter that evidence.

Accordingly, we need not decide which of the three possible rules applies in this case.  QBE established that 200 Leslie failed to comply with the policy's post-loss inventory requirement, and that such failure prejudiced QBE.  Thus, under any of the possible rules, 200 Leslie is not entitled to an appraisal and the district court's judgment is due to be affirmed.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's entry of judgment in favor of QBE on Count II of 200 Leslie's complaint.

**AFFIRMED.**